## DOCKET NO. 21-12062-HH

**UNITED STATES COURT OF APPEALS**

*for the*

**ELEVENTH CIRCUIT**

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

*Plaintiff-Appellee*,

v.

ANNA BEVILACQUA SPANGLER and RICHARD DALE SPANGLER,

*Defendants-Appellants.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CASE NO. 6:20-cv-360-ORL-40-LRH
(Hon. Paul G. Byron)

### APPELLANTS' OPENING BRIEF

GREGORY D. SWARTWOOD
THE NATION LAW FIRM
570 Crown Oak Centre Drive
Longwood, FL 32750
(407)339-1104
*Attorney for Appellants*
*Anna Bevilacqua Spangler and Richard Dale Spangler*

State Farm Mutual Automobile Insurance Company v. Anna Bevilacqua Spangler, et al., No. 21-12062

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1, Appellants, Anna Bevilacqua Spangler and Richard Dale Spangler, respectfully submit the following Certificate of Interested Persons and Corporate Disclosure Statement:

Byron, Paul G., United States District Court Judge

Hoffman, Leslie R., United States District Court Magistrate Judge

Leininger, Carri S., Esq.

Martinez, Maureen, Esq.

Spangler, Anna Bevilacqua

Spangler, Richard Dale

State Farm Mutual Automobile Insurance Company (Stock Ticker: none known)

Swartwood, Gregory D., Esq.

The Nation Law Firm, LLP

Williams, Leininger & Cosby, P.A.

## CORPORATE DISCLOSURE STATEMENT

Defendants-Appellants state that they do not have parent corporations and

C - 1 of 1

State Farm Mutual Automobile Insurance Company v. Anna Bevilacqua Spangler, et al., No. 21-12062

there are no publicly held corporations that own ten percent or more of their stock.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully submit that oral argument would be helpful to the disposition of this appeal.  Oral argument would allow the parties to address any specific questions regarding the factual record before the district court and the legal issues presented on appeal.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
  DISCLOSURE STATEMENT ..........................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT  ............................................. i

TABLE OF CONTENTS........................................................................................ ii

TABLE OF AUTHORITIES .................................................................................. iv

STATEMENT OF JURISDICTION  .......................................................................1

STATEMENT OF THE ISSUE.................................................................................2

STATEMENT OF THE CASE...................................................................................2

   A.  COURSE OF PROCEEDINGS AND DISPOSITION IN THE COURT
   BELOW  ..........................................................................................................2

   B.  STATEMENT OF FACTS ............................................................................4

      Applicable Policy Provisions ..........................................................................6

   C.  STANDARD OF REVIEW .........................................................................10

SUMMARY OF THE ARGUMENT ......................................................................11

ARGUMENT ..........................................................................................................12

     The District Court Correctly Found That The Definition Of "Motor Vehicle"
     In The Policy Did Not Apply To The Term "Uninsured Motor Vehicle" And
     That Issue Has Not Been Appealed By State Farm And Therefore Is Not
     Subject To Consideration In This Appellate Action .....................................12

     The District Court Erred In Concluding That Um Coverage Was Unavailable
     Because The Electric Scooter Was Not An "Uninsured Motor Vehicle"

      Based On A State Of Florida Statutory Definition As Opposed To The
      Definition In The Policy ...................................................................12

A.  Contract Interpretation .....................................................................14

B.  The Plain And Ordinary Meaning Of The Term "Land Motor Vehicle"
     Includes The Electric Scooter ..........................................................15

C.  Applicable Case Law/Statutory Definitions Of Motor Vehicle...................21

     •  Florida Supreme Court Decisions – Florida Statutes §324.021(1) ........ 21

     •  Florida Statutes §316.003(43) ........................................................31

     •  Florida Statutes §320.01(1)(a) .......................................................38

     •  Florida Statutes §627.041(8) ..........................................................39

     •  Florida Statutes §627.732(3) ..........................................................42

D.  Policy Exclusion..............................................................................43

CONCLUSION ..............................................................................46

CERTIFICATE OF COMPLIANCE.......................................................48

CERTIFICATE OF SERVICE ............................................................49

iii

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Auto–Owners Ins. Co. v. Anderson,*
  756 So.2d 29 (Fla. 2000) ....................................................14

\* *Carguillo v. State Farm Mutual Automobile Insurance Company,*
  529 So.2d 276 (Fla. 1988) .................................. 22, 23, 24, 28, 29, 30, 44, 45, 46

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ..........................................................10

*Clemons v. Dougherty County, Ga.,*
  684 F.2d 1365 (11th Cir. 1982) .........................................10

*Essex Insurance Company v. Zota,*
  985 So.2d 1036 (Fla. 2008) ...............................................40

*Excelsior Ins. Co. v. Pomona Park Bar & Package Store,*
  369 So.2d 938 (Fla.1979) ..................................................19

*Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co.,*
  254 F.3d 987 (11th Cir.2001) ............................................11

*Flores v. Allstate Ins. Co.,*
  819 So.2d 740 (Fla. 2002) .................................................15

*Geico General Insurance Company v. Schwinn*,
  No. 8:04CV1485T17TBM, 2006 WL 1529092
  (M.D. Fla. May 30, 2006)............................................. 26, 28

*Grant v. State Farm Fire and Casualty Company,*
  620 So.2d 778, 778 (Fla. 4th DCA 1993),
  *approving decision*, 638 So.2d 936 (Fla. 1994) ................................24

\* *Grant v. State Farm Fire and Casualty Company,*
  638 So.2d 936 (Fla. 1994) ............... 17, 18, 19, 24, 25, 26, 27, 28, 29, 30, 33, 42

iv

*Jackson v. Humphrey*, 776 F.3d 1232 (11th Cir. 2015),
   *cert. denied*, 577 U.S. 827, 136 S. Ct. 155, 193 L.Ed.2d 44 (2015) .................13

*Manning v. St. Petersburg Kennel Club, Inc.*,
   No. 8:13-cv-3060-T-36MAP, 2015 WL 477364 (M.D. Fla. Feb. 5, 2015) ..........27

*Marchesano v. Nationwide Property and Casualty Insurance Co.*,
   506 So.2d 410 (Fla. 1987) ...............................................................................37

*S.-Owners Ins. Co. v. MAC Contractors of Fla., LLC*,
   No. 18-13040, 2019 WL 1567761 (11th Cir. Apr. 11, 2019).............................10

*Sawyer v. Transamerica Life Insurance Company*,
   No. 09-cv-61288, 2010 WL 1372447 (S.D. Fla. March 31, 2010) ............. 32, 33

*Scottsdale Insurance Company v. Kuntz*,
   Case No.: 2:19-cv-00113-JES-MRM, 2020 WL 7074554
   (M.D. Fla. December 3, 2020) ..........................................................................16

*Standard Marine Insurance Co. v. Allyn*,
   333 So.2d 497 (Fla. 1st DCA 1976) ..................................................... 28, 31, 33

*State Farm Fire & Cas. Co. v. CTC Dev. Corp.*,
   720 So.2d 1072 (Fla. 1998) ......................................................................... 14, 20

*State Farm Fire & Cas. Co. v. Steinberg*,
   393 F.3d 1226 (11th Cir. 2004) ........................................................................11

*State Farm Mut. Auto. Ins. Co. v. Curran*,
   135 So.2d 1071 (Fla. 2014) ..............................................................................68

*Swire Pacific Holdings, Inc. v. Zurich Insurance Company*,
   845 So.2d 161 (Fla. 2003) ................................................................................14

*Warrior Tombigbee Tramp. Co. v. M/V Nan Fung*,
   695 F.2d 1294 (11th Cir. 1983) ........................................................................10

*Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*,
   856 F.3d 1343 (11th Cir. 2017) ........................................................................20

   **Other Authorities**

Fed. R. Civ. P. 8 ............................................................................28

Fed. R. Civ. P. 56 ..........................................................................10

Florida Statutes Chapter 316 ............................................... 32, 33

Florida Statutes §316.001 ..............................................................32

Florida Statutes §316.002 ..............................................................32

Florida Statutes §316.003 ................................... 31, 32, 33, 34, 35, 36, 39

Florida Statutes §316.2128 ............................................................36

Florida Statutes Chapter 320 .........................................................38

Florida Statutes §320.01 ........................................................ 38, 39

Florida Statutes §324.021 ............................... 11, 12, 18, 19, 21, 26, 27, 28, 30, 45

Florida Statutes (Florida Insurance Code) Chapters 624 – 632, 634, 635, 636, 641,

    642, 648 and 651 ....................................................................32

Florida Statutes §624.01 ................................................................32

Florida Statutes (Part 1 - Rates and Rating Organizations)

    §§627.011-627.381 ........................................................ 39, 41

Florida Statutes §627.011 ..............................................................39

Florida Statutes §627.021 ..............................................................40

Florida Statutes §627.041 ........................................................ 39, 40, 41

Florida Statutes §627.418 ........................................................ 32, 33

Florida Statutes §627.727 ................................................................... 33, 41

Florida Statutes §627.730 ......................................................................42

Florida Statutes §627.732 ................................................................... 25,42

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291 because this is a direct appeal from an order granting State Farm Mutual Automobile Insurance Company's ("State Farm") motion for summary judgment in a civil proceeding in the United States District Court for the Middle District of Florida, Orlando Division.  (Docs. 42, 43; A425, A445.)[1]

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1332(a)(1), based on diversity of citizenship of the parties and the provisions of the Federal Declaratory Judgment Act, 28 U.S.C. §2201 to declare the rights and obligations of the parties under certain policies of insurance.  (Doc. 1 at 1; A6.) State Farm is an Illinois corporation with its principal place of business in Bloomington, Illinois.  (Doc. 1 at 3; A8.)  Accordingly, State Farm is a citizen of Illinois.  (Doc. 1 at 3; A8.)  Both of the Appellants-Defendants, Anna Bevilacqua Spangler ("A. Spangler") and Richard Dale Spangler ("R. Spangler")(collectively referred to as the "Spanglers") are citizens of Florida.  (Doc. 1 at 3; A8.)  The amount in controversy exceeds $75,000.  (Doc. 1 at 1; A6.)  Appellants timely filed their notice of appeal on June 14, 2021.  (Doc. 47; A447.)

---

[1]  References to Docket Entries are abbreviated as "Doc. ___".  References to the Appendix are abbreviated as "A__.".

1

## STATEMENT OF THE ISSUE

Did the district court err in granting State Farm's motion for summary judgment, concluding that uninsured motorist coverage ("UM Coverage") was unavailable, because the Razor Pocket Mod Electric Scooter was not an "uninsured motor vehicle" based on a State of Florida statutory definition as opposed to the definition in the applicable policy?

## STATEMENT OF THE CASE

### A. COURSE OF PROCEEDINGS AND DISPOSITION IN THE COURT BELOW

On February 28, 2020, State Farm filed an action for declaratory relief pursuant to 28 U.S.C. § 2201. (Doc. 1; A6.) State Farm sought a declaration that UM Coverage was unavailable for a collision between an automobile and a Razor Pocket Mod Electric Scooter because the scooter was not an uninsured motor vehicle. (Doc. 1 at 12; A17.) Specifically, State Farm maintained that: (1) certain Florida Statutes provided the applicable definition of uninsured motor vehicle (Doc. 1 at 5-10; A10-15.) and/or (2) the State Farm insurance policy's definition of "***motor vehicle***" defines the term uninsured motor vehicle (Doc. 1 at 10-11; A15-

16.)  The Spanglers filed their Answer and Defenses to Complaint for Declaratory Relief and Counterclaim[2] ("Answer") on March 25, 2020.  (Doc. 11; A81.)

On January 15, 2021, the Spanglers moved for summary judgment.  (Doc. 27; A106.)  On February 16, 2021 State Farm filed its response to the Spanglers motion for summary judgment.  (Docs. 28; A227.) On February 19, 2021 the parties filed their joint stipulation as to material facts (Doc. 29; A279.)  On March 5, 2021, State Farm moved for summary judgment.  (Doc. 35; A313.)  On March 9, 2021, the Spanglers filed a reply to State Farm's response to the Spanglers motion for summary judgment.  (Doc. 36; A391.)  On April 2, 2021 the Spanglers filed their response to State Farm's motion for summary judgment.  (Doc. 37; A401.) On April 16, 2021, State Farm filed a reply to the Spanglers response to the State Farm's motion for summary judgment.  (Doc. 40; A417.)

On May 20, 2021, the district court granted State Farm's motion for summary judgment in part and denied its motion for summary judgment in part. The district court denied the Spanglers motion for summary judgment.  (Doc. 42;

---

[2]  The Spangler's initially asserted a counterclaim for breach of contract in this action.  (Doc. 11 at 10-12; A90-92.)  The Spanglers also brought a similar action for breach of contract in State Court.  To allow a resolution of the coverage issue first, the parties jointly filed a motion to dismiss the Federal Court breach of contract counterclaim without prejudice on September 11, 2020  (Doc. 22; A101.) That motion was granted via order dated September 14, 2020 (Doc. 23; A104.) .

A425.)  The district court denied State Farm's request for a declaratory judgment that the UM Coverage section of the policy only provided coverage for injuries caused by owners and operators of a "***motor vehicle***" as that term is defined in the policy.  (Doc. 42 at 9 and 19; A764.)  On the other hand, the district court granted State Farm's request for a declaratory judgment that UM coverage was unavailable "because the Policy's plain language, read in light of Florida's Financial Responsibility Law, shows that the Scooter is not an "uninsured motor vehicle. . . ."  (Doc. 42 at 18-19; A442-443.)

The district court entered judgment on May 21, 2021.  (Doc. 43; A445.)  The Spanglers filed a notice of appeal on June 14, 2021.  (Doc. 47; A447.)

## B. STATEMENT OF FACTS

State Farm issued State Farm Car Policy, Policy No. D580985594[3] ("Policy"), to R. Spangler.  (Doc. 1 at 3-4 (¶¶12, 17); A8-9.)  A. Spangler is a named insured

---

[3] The Complaint includes a copy of the insurance policy but not a copy of the Declarations. (Doc. 1-1; A21.)   Attached to the Spanglers motion for summary judgment as composite Exhibit 1 is Defendants' First Request for Admission to State Farm Mutual Automobile Insurance Company along with State Farm's Response to Defendants' Request for Admissions.   (Doc. 27-1; A131.) Hereinafter, State Farm's Response to Defendants' Request for Admissions will be referred to as "State Farm's Responses at ¶__."   As detailed at State Farm's Responses at ¶¶3 and 4, State Farm admits that the insurance policy with its Amendatory Endorsement attached to the Complaint as Exhibits A and B, respectively are authentic.  (Doc. 27-1 at 29; A159.)  Likewise, in State Farm's

4

under the Policy.  (Doc. 1 at 3 (¶11); A8.)  On or about July 11, 2019, A. Spangler was operating a 2015 Nissan Altima ("Nissan") when it was struck by a scooter ("Collision") operated by Edward Allen Levesque ("Deceased").   The scooter was a Razor Pocket Mod Electric Scooter ("Electric Scooter").  (Doc. 29 at 3 (¶11); A281.)

A. Spangler maintains that she was injured as a result of the Collision.  (Doc. 1 at 2 (¶5); A7.)  The Policy insured the Nissan driven by A. Spangler at the time of the Collision.  (Doc. 1 at 4 (¶18); A9.)  The applicable Policy renewal was effective June 22, 2019 through December 22, 2019.  (Doc. 1 at 4 (¶19); A9.)  Therefore, the Policy was in full force and effect at the time of the Collision.  *Id.*  However, the Policy was initially issued June 22, 2015, with the same coverages as those still in effect as of the June 22, 2019 through December 22, 2019 Policy period.  (Doc. 27-1 at 29 (¶¶5 and 6); A159.)

The Policy provides Uninsured Motor Vehicle Coverage with limits of $100,000 per person and $300,000 per occurrence.  (Doc. 1 at 4 (¶20); A9.)  The

---

Responses at ¶¶4 and 5, State Farm admits that the Declarations attached thereto are authentic.  (Doc. 27-1 at 29; A159.)  Attached to the Spanglers motion for summary judgment as Exhibit 2 is a copy of the actual Declarations for the applicable Policy, redacted to protect private, personal and confidential information.  (Doc. 27-2; A163.)

Electric Scooter being operated by the Deceased was uninsured. (Doc. 27-1 at 31 (¶21); A161.)

A. Spangler submitted a claim for the Uninsured Motor Vehicle Coverage. (Doc. 27-1 at 32 (¶22); A162.)  State Farm denied the claim.  (Doc. 27-1 at 32 (¶23); A162.)  An authentic copy of State Farm's Denial Letter dated December 6, 2019 is attached to Spanglers motion for summary judgment as Exhibit 3.  (Doc. 27-3 and Doc. 27-1 at 32 (¶24); A164 and A162.)

## **Applicable Policy Provisions**

In the Policy, depending on the coverage selected, an insured can opt for either Stacking or Non-Stacking UM Coverage.  (Doc. 1-1 at 24-30; A44-50.)    In this case, the Policy provides Stacking UM Coverage.[4]  (Doc. 1-1 at 24-26; A44-46.)

The Policy at 4-6 provides certain Definitions used throughout the Policy. Initially, the Policy notes that:

> *We* define certain words and phrases below for use throughout the policy.  Each coverage includes additional definitions only for use with that coverage.  These definitions apply to the singular, plural, possessive, and any other form of these words and phrases.

---

[4]  As detailed on pages 24 and 27 of the Policy (Doc. 1-1 at 24 and 27; A44 and 47.), if the symbol in the Declarations is "U" then the Policy provides Stacking Uninsured Motor Vehicle Coverage.  On the other hand, if the symbol in the Declarations is "U3" then the policy provides Non-Stacking Uninsured Motor Vehicle Coverage. As detailed in the Declarations, the instant Policy provides Stacking Uninsured Motor Vehicle Coverage. (Doc. 27-2; A163.)

6

> Defined words and phrases are printed in boldface italics.  (emphasis added)

(Doc. 1-1 at 4; A24.)    Moreover, UM Coverage is provided based on the following agreement:

### Insuring Agreement

1. *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle.*

2. The *bodily injury* for which **we** will pay compensatory damages must be:

    a. sustained by an *insured*;
    b. caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle*; and
    c. a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

(Doc. 1-1 at 25; A45.)  *We* is defined in the Policy as:  "the Company [State Farm] issuing this policy as shown on the Declarations Page."  (Doc. 1-1 at 6; A26.) *Bodily Injury* is defined in the Policy as:  "bodily injury to a *person*[5] and sickness, disease, or death that results from it."  (Doc. 1-1 at 4; A24.)  *Insured* is defined in the Policy as:  "*you*."  (Doc. 1-1 at 24 (Additional Definitions); A44.)  *You* is defined as:  "the named insured or named insureds shown on the Declarations Page.

---

[5] Policy defines *person* as "a human being."  (Doc. 1-1 at 4; A24.)

If a named insured shown on the Declarations Page is a ***person***, then "***you***" or "***your***" includes the spouse of the first ***person*** shown as a named insured if the spouse resides primarily with that named insured." (Doc. 1-1 at 6; A26.)[6].

Moreover, the Policy defines ***uninsured motor vehicle*** as:

***Uninsured Motor Vehicle*** <u>means a land motor vehicle</u> and a trailer attached to such land motor vehicle:

1. The ownership, maintenance, and use of which is:
    a. neither insured, not self-insured, nor bonded for bodily injury liability at the time of the accident; or
    b. insured, self-insured, or bonded for bodily injury liability at the time of the accident; but
        (1) the limits are less than required by the financial responsibility act of the state of Florida;
        (2) the limits of liability of the insurance, self-insurance, or bond are less than the damages for ***bodily injury*** sustained by the ***insured***; or
        (3) the entity providing the financial responsibility:
            (a) denies that it provides liability coverage for compensatory damages that result from the accident; or
            (b) is or becomes insolvent; or
2. The owner or driver:
    a. of which could not reasonably have been identified;
    b. remains unknown; and
    c. that causes ***bodily injury*** to the ***insured***.

***Uninsured Motor Vehicle*** does not include a land motor vehicle or trailer:

---

[6]  The insured named in the Declarations is R. Spangler.  A Spangler is the spouse of R. Spangler and she resides primarily with him and therefore meets the definition of **you** and is an **Insured.**  (Doc. 27-1 at 29 (¶7); A159.)

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy.  However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;
2. designed for use primarily off public roads except while on public roads**;**
3. while located for use as a dwelling or other premises; or
4. whose owner or operator could have been reasonably identified.

(Doc. 1-1 at 24-25 and Doc. 1-2 at 6; A44-45 and A74.)(underlined emphasis added).

The Policy does not define "land motor vehicle."  However, the Policy does define "*motor vehicle*" as:

*Motor Vehicle* means a vehicle with four or more wheels that:

1. Is self-propelled and is of a type:
   a.  Designed for; and
   b.  Required to be licensed for use on Florida highways; or
2. Is a trailer or semitrailer designed for use with a vehicle described in 1. above.

*Motor Vehicle* does not include:

1. A mobile home; or
2. Any motor vehicle which is:
   a.  Used in mass transit, other than public school transportation;
   b.  Designed to transport more than five passengers, exclusive of the operator; and
   c.  *Owned by* a municipality, a transit authority, or a political subdivision of the state.

(Doc. 1-1 at 4-5; A24-25.)

9

In its Complaint, State Farm maintains that the Electric Scooter being operated by the Deceased was not a ***motor vehicle*** as that term is defined by the Policy and therefore it was not an ***uninsured motor vehicle.*** (Doc. 1 at 12-13 (¶¶34-39); A17-18.) Moreover, it argues that one or more Florida Statutes should be used to define the Policy term ***uninsured motor vehicle*** and using such definitions the Electric Scooter being operated by the Deceased was not an ***uninsured motor vehicle.*** (Doc. 1 at 13-14 (¶¶40-45); A18-19.)

## C. STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*. *See, e.g., S.-Owners Ins. Co. v. MAC Contractors of Fla., LLC*, No. 18-13040, 2019 WL 1567761, at *1 (11th Cir. Apr. 11, 2019). The Court applies the same standard that district courts are required to follow. *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). Summary judgment is proper only if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1368-69 (11th Cir. 1982). This Court also reviews the district court's determination of

10

coverage under an insurance policy *de novo*.  *See Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co.*, 254 F.3d 987, 1003 (11th Cir. 2001).  Florida law governs the issues on appeal.  *See State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004).

## SUMMARY OF THE ARGUMENT

State Farm cannot attack the district court's denial of its motion for summary judgment relating to its argument that the Policy definition of ***motor vehicle*** defined the Policy term ***uninsured motor vehicle,*** as it did not cross-appeal.

The district court erred in granting State Farm's motion for summary judgment, concluding that UM Coverage was unavailable, because the Electric Scooter was not an "uninsured motor vehicle" based on a State of Florida statutory definition as opposed to the definition in the Policy.

*First*, the Policy defines the term "uninsured motor vehicle" as a "land motor vehicle."  The plain and ordinary meaning of the term "land motor vehicle" is a vehicle, used to carry or transport something, which is powered by a motor and travels on land.  The Electric Scooter at issue meets the plain and ordinary meaning of that term and therefore it is a "uninsured motor vehicle."

*Second*, the decisions by the Florida Supreme Courts relying on Florida Statutes §324.021(1), while instructive, are not dispositive and Florida Statutes

11

§324.021(1) should not be relied upon to rewrite the plain and ordinary terms of the Policy.

*Third*, State Farm, in its Complaint, identifies numerous "relevant statutes" which it asserts support its decision that the Electric Scooter is not a "land motor vehicle" as defined by the Policy. Those statutes do not support State Farm's position and should not be utilized to change the plain and ordinary terms of the Policy.

Finally, the Policy includes an exclusion which provides in part that land motor vehicles which are designed for use primarily off public roads are not considered "uninsured motor vehicles." However, there is an exception to this exclusion. That exception allows that if such off road vehicles are being used on a public road, then the vehicle will still be deemed to be an "uninsured motor vehicle." The Collision at issue here occurred on a public road and therefore, to the extent State Farm argues that the exclusion applies, the exception to the exclusion also applies and UM Coverage is available.

## ARGUMENT

**The District Court Correctly Found That The Definition Of "Motor Vehicle" In The Policy Did Not Apply To The Term "Uninsured Motor Vehicle" And That Issue Has Not Been Appealed By State Farm And Therefore Is Not Subject To Consideration In This Appellate Action.**

As a preliminary matter, State Farm made two general arguments as to why the Electric Scooter was not an uninsured motor vehicle under the terms of the Policy. The second argument, discussed below, is properly before this Court. On the other hand, State Farm's first argument, to wit: that the definition of the term ***motor vehicle*** in the Policy defined the Policy term ***uninsured motor vehicle***, was rejected by the district court. In particular, the district court found as follows with respect to that issue:

> Thus, the Court finds that it is clear from the plain language of the Policy that the "motor vehicle" definition in the definitions section is irrelevant to the "uninsured motor vehicle" additional definition in the UM coverage section. Accordingly, the Court denies the Plaintiff's Motion's request for a declaration that the UM coverage section of the Policy applies to injuries caused by owners and operators of a "motor vehicle," as defined by the Policy, and that the Scooter does not constitute a "motor vehicle" under the Policy. (footnote omitted)

State Farm did not cross-appeal the denial of its Motion for Summary Judgment based on this issue. Therefore, this issue should not be considered in this appellate action. *Jackson v. Humphrey*, 776 F.3d 1232, 1239-1240 (11th Cir. 2015), *cert. denied*, 577 U.S. 827, 136 S. Ct. 155, 193 L.Ed.2d 44 (2015)(a party that fails to cross-appeal cannot attack the underlying decree with a view to either enlarging its own rights or lessening the rights of its adversary).

**The District Court Erred In Concluding That UM Coverage Was Unavailable Because The Electric Scooter Was Not An "Uninsured Motor Vehicle" Based**

13

**On A State Of Florida Statutory Definition As Opposed To The Definition In The Policy**

### A. Contract Interpretation.

In Florida, "insurance contracts must be construed in accordance with the plain language of the policy." *Swire Pacific Holdings, Inc. v. Zurich Insurance Company,* 845 So.2d 161, 165 (Fla. 2003). Moreover, an insurance policy must be read as a whole, "endeavoring to give every provision its full meaning and operative effect. *Swire,* 845 So.2d at 166 (quoting *Auto–Owners Ins. Co. v. Anderson,* 756 So.2d 29, 34 (Fla. 2000)). Additionally, if "the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is ambiguous." *Auto-Owners Ins. Co. v. Anderson,* 756 So.2d 29, 34 (Fla. 2000).

If the language of an insurance policy is subject to "differing interpretations, the term should be construed liberally in favor of the insured and strictly against the insurer." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.,* 720 So.2d 1072, 1076 (Fla. 1998). In addition, if an insurer fails to define a term in the policy the insurer cannot take the position that there should be a narrow, restrictive interpretation of the coverage provided. *Id.* Finally, "[p]olicy provisions that tend to limit or avoid liability are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy, and exclusions to coverage are

14

construed even more strictly against the insurer than coverage clauses." *Flores v.*

*Allstate Ins. Co.,* 819 So.2d 740, 744 (Fla. 2002).

**B. The Plain And Ordinary Meaning Of The Term "Land Motor Vehicle" Includes The Electric Scooter**

The issue in this case is straight forward. A. Spangler is entitled to UM Coverage if the Electric Scooter driven by the Decedent which struck her automobile is an ***uninsured motor vehicle*** as that term is defined by the Policy. If it is not, she is not entitled to UM Coverage. It is agreed that the Policy at issue provided stacked UM Coverage. It is agreed that A. Spangler was an insured under the Policy. It is agreed that the Electric Scooter was powered by batteries and was motor driven. (Doc. 27-1 at 31 (¶16); A161.) It is agreed that the Electric Scooter was a two-wheeled vehicle. (Doc. 27-1 at 31 (¶17); A161.) It is agreed that the electric scooter was uninsured. (Doc. 27-1 at 31 (¶21); A161.) Based on these facts, and the arguments set forth below, it is clear that A. Spangler is entitled to UM Coverage.

State Farm in its Complaint at ¶30 (Doc. 1 at 11-12 (¶30); A16-17.) admits that the Policy defines ***Uninsured Motor Vehicle*** as a "land motor vehicle" with various modifiers and exclusions. Of course, not any vehicle rises to the level of an uninsured motor vehicle. The plain and ordinary meaning of the term "land motor vehicle" requires that the vehicle be the type of vehicle that is used on land. Also, the

15

vehicle must be powered by a motor. There is no question but that the Electric

Scooter is a vehicle that is used on land and is a vehicle that is powered by a motor[7].

The district court acknowledges applicable Florida case law that requires a

court to construe a contract in accordance with the plain language of a policy.

(Doc. 42 at 7; A431.)[8] Here, however, the district court found that it was required

to look outside of the Policy noting that:

> "Generally, courts will strive to interpret an automobile
> insurance policy based on the definitions contained within the
> policy. However, if the definition provided in one section of the
> policy is not applicable to the coverage at issue in another section,
> courts may be compelled to search elsewhere for a sensible and
> appropriate definition." *Grant v. State Farm Fire & Cas.*, 638 So.
> 2d 936, 937 (Fla. 1994). In the instant case, the "motor vehicle"
> definition provided in the definitions section is not applicable to
> the "uninsured motor vehicle" additional definition in the UM
> coverage section for the reasons provided above. Moreover, the
> additional definition states that an "uninsured motor vehicle" is a

---

[7] In *Scottsdale Insurance Company v. Kuntz,* Case No.: 2:19-cv-00113-JES-MRM,
2020 WL 7074554, at *4-5 (M.D. Fla. December 3, 2020)(the Court interpreted the
term "land motor vehicle" under Commercial Garage Coverage Insurance Policy to
determine if an exclusion and/or limitation applied; the Court found that "the term
land motor vehicle [using dictionary definitions of those three words] has an
ordinary, plain meaning that does encompass a motorized vehicle intended for land
use, including the ATV in this case." (noting that the ATV traveled on land, and
was powered by a gasoline engine (motor) and that it was used to carry or transport
something (vehicle))).

[8] The district court noting: "*Cf. Landmark Am. Ins. v. Pin-Pon Corp.*, 155 So. 3d
432, 437 (Fla. 4th DCA 2015)(citing *Swire Pac. Holdings, Inc. v. Zurich Ins.*, 845
So. 2d 161, 165 (Fla. 2003))(stating that courts must construe insurance contracts
'in accordance with the plain language of the policy')".

"land motor vehicle," which the Policy does not define. Accordingly, the Court must search elsewhere for "a sensible and appropriate definition." *See id.*

(Doc. 42 at 7; A431.)  The Florida Supreme Court's decision in *Grant v. State Farm Fire and Casualty Company,* 638 So.2d 936 (Fla. 1994) will be discussed in more detail below.  However, it is acknowledged that in *Grant*, the Florida Supreme Court did look outside the policy -- to a Florida Statutory definition -- to define a similar term "motor vehicle" used in an exclusion in the UM Coverage section of a State Farm policy.  Here, however, one need look no further than the plain and ordinary terms of the Policy.

In *Grant*, the Court sought to determine the definition of the term "motor vehicle" as that term was used in a UM Coverage exclusion.  The Court in *Grant* specifically rejected this exact same defined term ("motor vehicle") that was used in another section of the policy finding that it did not apply to the UM Coverage section.  Thus, this explains the Court's finding that "[g]enerally, courts will strive to interpret an automobile insurance policy based on the definitions contained within the policy.  However, if the definition provided in one section of the policy is not applicable to the coverage at issue in another section, courts may be compelled to search elsewhere for a sensible and appropriate definition." *Grant,* 638 So.2d at 937.  (emphasis added)

17

Here, the issue is whether the Electric scooter is an ***uninsured motor vehicle*** under the Policy.  Unlike the term "motor vehicle" in *Grant*, this term <u>is</u> defined, in the UM Coverage section of the Policy.  The term is defined as a "land motor vehicle."[9]  While "land motor vehicle" is not defined, its meaning is plain and clear – a motorized vehicle operating on land.  Accordingly, *Grant* does not support looking outside the policy to define a term in the Policy which is already defined.

Moreover, the Policy itself uses this expansive term "land motor vehicle" in several locations, other than those defining ***uninsured motor vehicle.***  For example, the Policy indicates in part that ***car*** "means a land motor vehicle with four or more wheels, designed for use primarily on public roads."   (Doc. 1-1 at 4; A24.)  Moreover, the term is used in describing Death, Dismemberment and Loss of Sight Coverage -- "***We*** will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an ***insured***  1. dies . . . as the direct result of an accident that involves the use of a <u>land motor vehicle</u>. . . ."  (Doc. 1-1 at 36; A56.)(underlined emphasis added).

---

[9]  Admittedly, there is not a great deal of difference between the terms "motor vehicle" and "land motor vehicle."  One could argue with the same authority that a court should simply apply the plain meaning of both terms.  However, the <u>reason</u> the Court in *Grant* relied on Florida Statutes §324.021(1) is equally as important.  That issue will be discussed in more detail below.

18

Courts should strive to reconcile apparent inconsistencies in interpreting the terms of an insurance policy. *See Excelsior Ins. Co. v. Pomona Park Bar & Package Store,* 369 So.2d 938, 941 (Fla.1979)(noting that every provision in a contract should be given meaning and effect and apparent inconsistencies reconciled if possible). The district court, relying on *Grant* and its holding that Florida's financial responsibility law (Florida Statutes §324.021(1)) should be used to define the term "motor vehicle," found that the term "land motor vehicle" should be modified to include the following language: "land motor vehicle <u>that is designed and required to be licensed for use upon a highway</u>."[10]

If the term "land motor vehicle" referred only to such vehicles that are "designed and required to be licensed for use upon a highway" then there would be no reason for State Farm to include in the definition of **car** the portion of the definition that limited "land motor vehicles" to those "designed for use primarily on public roads." The district court's interpretation of the term "land motor vehicle" therefore does not support a consistent reading of the term throughout the Policy. Moreover, if State Farm wanted to further define "land motor vehicle" (in the UM

---

[10] "For the reasons previously stated, the Court determines that the Scooter is not "designed and required to be licensed for use upon a highway" under the Financial Responsibility Law. That is, the Scooter can *never* be driven on main thoroughfares. Therefore, it is not an "uninsured motor vehicle" qualified for UM coverage." (Doc. 42 at 17; A441.)

19

Coverage section or elsewhere) then it certainly could have done so just like it did in defining *car*.

Here, the district court's holding violates the spirit of the rules of construction as applied to insurance policies. Terms should be read expansively to provide coverage not narrowly to limit coverage. *State Farm Fire & Cas. Co. v. CTC Dev. Corp.,* 720 So.2d 1072, 1076 (Fla. 1998)(if the language of an insurance policy is subject to "differing interpretations, the term should be construed liberally in favor of the insured and strictly against the insurer." and if an insurer fails to define a term in the policy the insurer cannot take the position that there should be a narrow, restrictive interpretation of the coverage provided). The Spanglers purchased an insurance policy that provided UM Coverage if they were involved in a collision involving any "land motor vehicle." Based on the district court's interpretation, that coverage would be limited to only collisions involving a "land motor vehicle that is designed and required to be licensed for use upon a highway." The Policy should not be thus modified and the Spanglers should be provided the coverage they purchased. *Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1348 (11th Cir. 2017)(Courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." (quoting *Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co.*, 913

20

So.2d 528, 532 (Fla. 2005))).

## C. Applicable Case Law/Statutory Definitions Of Motor Vehicle

State Farm maintains that this Court should apply one or more definitions from the Florida Statutes to define the term "land motor vehicle" which State Farm did not see fit to define within its own policy.  Confusingly, the Complaint, at unnumbered pages 5-10, lists numerous "Relevant Statutes."  (Doc. 1 at 5-10 (¶¶23-28); A10-15.)   However, the Complaint only specifically identifies one statute as supporting State Farm's position that the Electric Scooter is not a land motor vehicle.  Specifically, at ¶37 of the Complaint, the Complaint alleges as follows: "[p]ursuant to F.S. §316.003 (43), the Electric Scooter that was being operated by the Deceased at the time of the Accident is not a Motor Vehicle."  (Doc. 1 at 13 (¶37); A18.)  However, the Complaint at ¶39 and ¶43 both generally allege that the Electric Scooter is not a motor vehicle as defined by the Policy and "Florida Statute(s)[11]."  (Doc. 1 at 13-14 (¶¶39 and 43); A18-19.)   Accordingly, in an abundance of caution, the Spanglers will show below that the definitions set forth in each of the "Relevant Statutes" cited in the Complaint do not support State Farm's denial of UM Coverage.

- Florida Supreme Court Decisions -  Florida Statutes §324.021(1)

---

[11] Term used in the plural at ¶39 and in the singular at ¶43.

21

Although not directly on point, the Florida Supreme Court, in 1988 and 1994, issued two opinions which are instructive. Both cases involved a State Farm insurance policy and the application of an exclusion under the UM Coverage section.

First, in *Carguillo v. State Farm Mutual Automobile Insurance Company,* 529 So.2d 276 (Fla. 1988), the insured's son was killed when his off-road motorcycle collided with another, uninsured, off-road motorcycle.[12] The accident occurred in an open field, not on a public roadway. A claim was made for uninsured motorist coverage under the State Farm policy. The claim was denied. In particular, State Farm relied upon an exclusion which provided that an uninsured motor vehicle does not include a land motor vehicle "designed for use mainly off public roads except while on public roads."[13] In that case, State Farm argued that the off-road motorcycle was excluded as a "land motor vehicle" because it was designed mainly for use off public roads and the accident did not occur on a public road.

---

[12] The Florida Supreme Court specifically noted that both "cycles were designed for use mainly off public roads, were registered and titled by the state, but were not licensed for operation upon the public highways." *Carguillo,* 529 So.2d at 277.

[13] The instant Policy includes the same exclusion and will be discussed in more detail below.

22

The Fourth District Court of Appeal certified the following question to the Florida Supreme Court: "WHETHER A VEHICLE DESIGNED PRIMARILY FOR OFF-ROAD USE CAN BE EXCLUDED FROM UNINSURED MOTORIST COVERAGE BECAUSE IT IS NOT A 'MOTOR VEHICLE' WITHIN THE DEFINITION OF THE FINANCIAL RESPONSIBILITY LAW OR WHETHER SUCH AN EXCLUSION IS VOID FOR PUBLIC POLICY REASONS?" *Carguillo,* 529 So.2d at 277. In finding in favor of State Farm, the Court found that Florida's uninsured motorist statute (§627.727) "provides an insured motorist with *at least* the same amount of protection as would have been provided if the tort-feasor had complied with the financial responsibility law." *Id.* at 278 (emphasis in original)(citation omitted). Since "the policy provision at hand does not reduce the UM coverage below the level of protection that would have been provided if the owner of the Suzuki had complied with the financial responsibility law [the exclusion was not barred from a public policy standpoint]." *Id.* However, the Court went on to note that "[w]hile an insurer may provide more coverage than is statutorily required, there is no requirement that an insured be protected to a greater extent than that statutorily mandated." *Id.*

Although not directly decided by the Florida Supreme Court, implicit in its decision was the fact that the off-road motorcycle was a "land motor vehicle"

23

under State Farm's policy and that if the accident had occurred on a public roadway, the exclusion[14] would not have applied.

Six years later, the Florida Supreme Court once again examined a UM Coverage exclusion issue under a State Farm policy. In *Grant v. State Farm Fire and Casualty Company,* 638 So.2d 936 (Fla. 1994), plaintiff, Michael Grant, was injured in an accident while operating a motorcycle owned by him. The motorcycle collided with an uninsured motorist. The accident occurred on a public road.[15] A claim for UM Coverage was made by Grant and the claim was denied. In particular, State Farm relied on an exclusion which provided that there was no UM Coverage for bodily injury to an insured while the insured was "occupying a motor vehicle owned by you, your spouse, or any relative if it is not insured for this coverage under this policy." *Grant*, 638 So.2d at 937. The policy at issue insured only a 1978 Corvette and did not insure the motorcycle.

---

[14] To reiterate, the exclusion excluded from coverage land motor vehicles designed for use off public roadways, but an exception to the exclusion provided that such land motor vehicles were covered "while on public roads." *Carguillo,* 529 So.2d at 277.

[15] The Florida Supreme Court's decision does not indicate where the accident occurred. However, the decision in the lower court indicates that the Plaintiff was involved "in a collision when the motorcycle owned and operated by him collided with an uninsured motorist while on a public road." *Grant v. State Farm Fire and Casualty Company,* 620 So.2d 778, 778 (Fla. 4th DCA 1993), *approving decision*, 638 So.2d 936 (Fla. 1994).

There, like here, the Court noted that the policy defined the term "motor vehicle" in various portions of the policy but that the defined term "motor vehicle" did not apply to the uninsured motor vehicle coverage.  In particular, the Court noted that:

> Generally, courts will strive to interpret an automobile insurance policy based on the definitions contained within the policy.  However, if the definition provided in one section of the policy is not applicable to the coverage at issue in another section, courts may be compelled to search elsewhere for a sensible and appropriate definition.  In the instant case, the definition of motor vehicle that is included under the No-Fault section of the policy[16] is not relevant to the exclusions discussed in the Uninsured Motor Vehicle section of the policy.

*Id*. at 937-938.

Grant argued, in part, that the exclusion did not apply as the Court should rely on the definition of "motor vehicle" in the policy's no-fault and medical payment coverages sections -- which defined "motor vehicle" as a vehicle with four or more wheels.  To bolster this argument, Grant noted that Florida Statutes §627.732 (pertaining to personal injury protection coverage) also defined a "motor vehicle" as having four or more wheels.  On the other hand, State Farm argued that the definition of motor vehicle in Florida's financial responsibility law, Florida

---

[16] Defining "motor vehicle" similar to the definition of that same term in the instant policy.  *Id*. at 937.

Statutes §324.021(1)[17], should be used. With very little discussion, the Court rejected Grant's argument and "conclude[d] that this statutory definition [Florida Statutes §324.021(1)] is consistent with the plain meaning of the term 'motor vehicle.' Therefore we hold that a motorcycle is a motor vehicle in the context of this case." *Id.* at 938.

It should be noted that the Court's decision in *Grant* does not appear to be a general endorsement of using a statutory definition to define a term in an insurance policy that an insurer failed to define. The Court does note that if the term in the policy is undefined "courts may be compelled to search elsewhere for a sensible and appropriate definition." ." *Grant*, 638 So.2d at 937. However, the Court's holding with respect to Florida Statutes §324.021(1) was that the statute was only "consistent" with the <u>plain</u> meaning of "motor vehicle" in the policy. The Court still focused on the "plain meaning" of the policy terms. Moreover, the Court specifically limited its holding noting that a "motorcycle is a motor vehicle in the context of this case."[18] *Id.* at 938.

---

[17] In pertinent part, the Court noted that that statute defined motor vehicle as "every self-propelled vehicle which is designed and required to be licensed for use upon a highway." *Grant*, 638 So.2d at 937.
[18] See also *Geico General Insurance Company v. Schwinn*, No. 8:04CV1485T17TBM, 2006 WL 1529092, at *1 and *7 (M.D. Fla. May 30, 2006)(case involved injuries to the driver of a ATV which collided with an off-

26

Interestingly, State Farm, in its Complaint, does not even argue that Florida Statutes §324.021(1) – the statute referenced in *Grant* as being "consistent" with the plain definition in the policy – should be referenced in defining "motor vehicle" under its UM Coverage[19].

---

road motorcycle on a private road; unlike here where ***uninsured motor vehicle*** is defined as a "land motor vehicle," the applicable definition for uninsured motorist coverage simply stated that a "Uninsured auto" is an auto. . . ;" relying on *Grant*, the Court, in part, held that the off-road motorcycle was not a "uninsured auto" as "the term 'uninsured auto' should be accorded its plain meaning as defined in the insurance policy as conformed to the Florida statutes [Fla. Stat. §324.021] in effect at the time of the accident;" the Court also noted that public policy was not implicated as Florida's Financial Responsibility Law was meant to protect vehicle owners on public highways and the collision at issue there was on a private road. Here, the plain meaning of the expansive term "land motor vehicle" includes an electric scooter and additionally the Collision occurred on a public highway.

[19]   In its compliant, State Farm failed to identify Florida Statutes §324.021(1) as one of the statutes it was relying on to define the Policy terms. In the district court, the Spanglers argued that this failure should prevent State Farm from relying on that statute in this litigation. The district court rejected this argument noting that while it was true that State Farm failed to identify that statute, the Complaint did indicate that the Electric Scooter was not designed for or required to be licensed for use on Florida highways. (Doc. 42 at 12; A436.) The Court also noted that the Spanglers anticipated State Farms reliance on this statute and they briefly addressed it in their motion for summary judgment. *Id.* The Court concluded that "it is doubtful that [the Spanglers] lacked proper notice of the statute, and they certainly did not lack notice of the claim." (Doc. 42 at 13; A437.) While it is true that the Spanglers did anticipate this argument based on applicable case law, they continued to maintain that the failure to include Florida Statutes §324.021(1) in its Complaint, especially when the Complaint specifically references all other statutes relied upon, should prevent State Farm from relying on that statute in this litigation. See *Manning v. St. Petersburg Kennel Club, Inc.*, No. 8:13-cv-3060-T-36MAP, 2015 WL 477364 (M.D. Fla. Feb. 5, 2015)(the Court refused to consider

27

As noted in *Geico General Insurance Company v. Schwinn*, No. 8:04CV1485T17TBM, 2006 WL 1529092, at *1 and *7 (M.D. Fla. May 30, 2006), " 'Where a contract of insurance is entered into on a matter surrounded by statutory limitations and requirements, the parties are presumed to have entered into the [the contract] with reference to the statute, and the statutory provisions become a part of the contract." *See Standard Marine Insurance Co. v. Allyn,* 333 So.2d 497 (Fla. 1st DCA 1976).' "    Based on the requirements of Florida's uninsured motorist statute, the Florida Supreme Court held in *Carguillo* that "Section 627.727 provides an insured motorist with *at least* the same amount of protection as would have been provided if the tort-feasor had complied with the financial responsibility law."    *Carguillo,* 529 So.2d at 278 (emphasis in original)(citation omitted).    Likewise, in *Grant*, the Court found that Florida Statutes §324.021 was an appropriate reference in determining that a motorcycle was a "motor vehicle" for purposes of an exclusion in the UM Coverage section of a State Farm policy.    In support the Court relied, in part, on *Standard Marine Insurance Co. v. Allyn,* 333 So.2d 497 (Fla. 1st DCA 1976) similar finding that a motorcycle is a motor vehicle based on public policy and the presumed contractual

---

new argument raised for the first time in opposition to motion for summary judgment; the Court found opposing party was not provided sufficient notice of the new claim) and generally Fed. R. Civ. P. 8.

agreement to incorporate the uninsured motorist statutory provisions into the policy.

The issue in both *Carguillo* and *Grant* was whether a policy exclusion violated the <u>minimum</u> UM Coverage required by statute. Hence, the Court relied on the statutory definition of "motor vehicle" set forth in Florida's financial responsibility law as the uninsured motorist statute requires at least this much coverage. *Carguillo,* 529 So.2d at 278. The issue here is just the opposite. As noted by the Florida Supreme Court, "an insurer may provide more coverage than is statutorily required." *Carguillo,* 529 So.2d at 278. Defendants are not arguing that State Farm failed to provide the minimum uninsured motor vehicle coverage required. Instead, they argue that State Farm has failed to provide the <u>maximum</u> uninsured motor vehicle coverage paid for by the Defendants and as detailed in the Policy.

There is no question but that State Farm has provided expansive UM Coverage pursuant to the terms of the Policy bought and paid for by the Spanglers. State Farm has agreed to pay UM Coverage if an individual is injured by an uninsured motor vehicle which the Policy defines as any "land motor vehicle." Clearly, the Scooter is a land motor vehicle.

29

Admittedly, the holdings in *Carguillo* and *Grant* support that State Farm <u>could have</u> excluded UM Coverage for injuries caused by an Electric Scooter like the one operated by the Decedent. It did not. Instead, State Farm provided UM Coverage to the Spanglers for injuries involving a "land motor vehicle."

Moreover, State Farm's argument here violates the finding in *Carguillo* that an insurer may provide more coverage than is statutorily required, because it <u>prevents</u> an insurer from selling more UM Coverage than statutorily required. There is no question but that State Farm sold and the Spanglers purchased UM Coverage for injuries occurring as a result of a collision with a land motor vehicle. If the expansive term "land motor vehicle" is not enough to actually provide UM Coverage for injuries arising out of a collision involving a motorized vehicle that operated on land, what language could be used to provide "more coverage than is statutorily required?"

State Farm's attempt to use Florida Statutes §324.021(1) to define both the floor (supported by *Carguillo* and *Grant*) <u>and</u> ceiling (the issue here – not supported by *Carguillo* and *Grant*) of the UM Coverage it provided in its Policy should be rejected.

- Florida Statutes §316.003(43)[20]

As noted above, this statute is the only statute that Plaintiff directly alleges should be considered in determining whether the electric scooter is a "land motor vehicle" as defined by the Policy.  (Doc. 1 at 13 (¶37); A18.)  The definition of motor vehicle set forth in Florida Statutes §316.003(43)[21] is as follows:

> (43)  MOTOR VEHICLE. – Except when used in s. 316.1001, a self-propelled vehicle not operated upon rails or guideway, but not including any bicycle, motorized scooter, electric personal assistive mobility device, mobile carrier, personal delivery device, swamp buggy, or moped.  For purposes of s. 316.1001, "motor vehicle" has the same meaning as provided in s. 320.01 (1)(a).

---

[20] The "Relevant Statutes" identified in the Complaint have been subject to change over the last several years.  The Spanglers here are citing to the statutes in effect as of the date the Policy became effective, June 22, 2019.  To the extent a Florida Statute(s) should be utilized at all (which it should not), the statute(s) in effect at the time of contracting is the applicable statute(s).  See *Standard Marine Insurance Co. v. Allyn,* 333 So.2d 497, 499 (Fla. 1st DCA 1976)(" 'where a contract of insurance is entered into on a matter surrounded by statutory limitations and requirements, the parties are presumed to have entered into such agreement with reference to the statute, and the statutory provisions become a part of the contract.' " (citation omitted)).

[21] Except for the subparagraph number, this version of that statute went into effect July 1, 2018.  At that time, it was numbered "(42)."  Florida Statutes §316.003 was amended again June 18, 2019 and a new definition was added at "(38) Micromobility device."  Adding this new definition pushed the definition of "Motor vehicle" from number "(42)" to "(43)." The statute was amended again effective July 1, 2020 (adding another new definition) and therefore the "Motor vehicle" definition is now "(44)."

31

First, as set forth in the preamble to Florida Statutes §316.003, the listed definitions "when used in this chapter (Chapter 316), shall have the meanings respectively ascribed to them in this section, except where the context otherwise requires."  Florida Statutes Chapter 316 is entitled State Uniform Traffic Control. Florida Statutes §316.001 provides in part that the "chapter may be known and cited as the 'Florida Uniform Traffic Control Law.'"  Moreover, Florida Statutes §316.002 provides in pertinent part that it is the "legislative intent in the adoption of this chapter to make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordinances to apply to all municipalities."  In other words, Florida Statutes §316.003 has nothing to do with insurance, not even automobile insurance.  The definitions apply only to the identified chapter which sets forth Florida traffic laws.

Generally speaking, insurance policies which are inconsistent with the Florida Insurance Code[22] must be harmonized with the Code.  See Florida Statutes §627.418(1).  However, utilizing statutes outside of the insurance code to harmonize an insurance contract is a device rarely employed.  See *Sawyer v. Transamerica Life Insurance Company,* No. 09-cv-61288, 2010 WL 1372447, at

---

[22] Florida Statutes §624.01 provides that the following chapters are part of the Florida Insurance Code:  Chapters 624 – 632, 634, 635, 636, 641, 642, 648 and 651.

*6 (S.D. Fla. March 31, 2010)(finding that Florida Statutes §627.418(1) "indicates that only the Insurance Code is incorporated into insurance policies" and distinguishing several cases cited which allegedly supported the use of statutes outside of the insurance code; in particular *Grant* and *Allyn* above, noting that these cases are "distinguishable because they involve the application of the Financial Responsibility Act to automobile accident insurance policies. The Financial Responsibility Act, unlike the non-Insurance Code provisions cited by the Plaintiff, largely concerned insurance requirements for motor vehicle owners in Florida.").

Accordingly, Florida Statutes §316.003 specifically provides that it applies only to Chapter 316, not Florida Statutes §627.727 (uninsured motorist coverage). Additionally, this non-Insurance Code statute should not control the definition in an insurance policy – where the insurer decided not to define the term.

However, even if the definition in Florida Statutes §316.003(43) applied, the definition, and amendments thereto, highlight the very problem with relying on constantly changing statutory definitions to define terms in an insurance policy. In particular, that definition provides generally that a motor vehicle is: "a self-propelled vehicle not operated upon rails or guideway. . . ." Certainly, an Electric Scooter is a self-propelled vehicle and same is not operated upon rails or

33

guideway. The rest of the definition indicates what a motor vehicle is not. The excluded vehicles are as follows:

1. Bicycle - Florida Statutes §316.003(4) – vehicle propelled solely by human power;

2. Motorized Scooter – (see below);

3. Electric personal assistive mobility device - Florida Statutes §316.003(23) – self balancing 2-non-tandemed-wheeled device (Segway);

4. Mobile carrier - Florida Statutes §316.003(40) – electrically powered device intended primarily for transporting property on sidewalks and crosswalks;

5. Personal delivery device - Florida Statutes §316.003(55) – electrically powered device intended primarily for transporting property on sidewalks and crosswalks (slower than a mobile carrier and can be operated without active monitoring by a natural person);

6. Swamp buggy - Florida Statutes §316.003(85) – motorized off-road vehicle used to travel over swampy or varied terrain with large tires or tracks and an elevated platform; and

7.  Moped - Florida Statutes §316.003(41) – vehicle with peddles to permit propulsion by human power and a motor.

Decedent's Electric Scooter was clearly a self-propelled vehicle not operated upon rails or guideway and it was not otherwise excluded as one of the above defined types of vehicles.  Of course, the Court will note that the Spanglers have not yet discussed whether the electric scooter qualifies as a "motorized scooter." As of the date the Policy was issued it did and therefore would not be considered a motor vehicle pursuant to Florida Statutes §316.003(43).   However, just days earlier, it did not.  In particular, on June 17, 2019 and before[23], motorized scooter was defined by Florida Statutes §316.003(44) as follows:

> Any vehicle not having a seat or saddle for the use of the rider, designed to travel on not more than three wheels, and not capable of propelling the vehicle at a speed greater than 30 miles per hour on level ground.

Effective June 18, 2019, the statute was changed (as well as the number) to read as follows:

> Any vehicle or micromobility device[24] that is powered by a motor with or without not having a seat or saddle for the use

---

[23]  First defined effective July 1, 2002 (§316.003(82)), the definition of the term "motorized scooter" remained the same until June 18, 2019.

[24]  The electric scooter is also not a micromobility device which is a motorized transportation device made available for private use by registration through an online application website or software.  Florida Statutes §316.003(38).

of the rider, <u>which is</u> designed to travel on not more than three wheels, and <u>which is</u> not capable of propelling the vehicle at a speed greater than <u>20</u> ~~30~~ miles per hour on level ground.

Florida Statutes §316.003(45). It is undisputed that the electric scooter involved in the incident with A. Spangler had a seat or saddle[25]. Accordingly, on June 17, 2019, that vehicle did not meet the definition of a "motorized scooter" and therefore it was a "motor vehicle" pursuant to Florida Statutes §316.003(43) as it was a self-propelled vehicle, not operated upon rails or guideway, and was not otherwise excluded. However, based solely on an amendment to the statute, on June 18, 2019, it became a "motorized scooter" and therefore excluded from the definition of "motor vehicle" from that date forward[26].

Importantly, the Policy at issue (effective June 22, 2019) went into effect just four days after the statutory amendment allegedly barring coverage for the Collision involving Decedent's electric scooter. However, the prior renewal of the

---

[25] See State Farm's Responses at ¶¶11 and 15. (Doc. 27-1 at 30-31 (¶¶11 and 15); A160-161.)

[26] The June 18, 2019 statutory amendments also amended Florida Statutes §316.2128 adding "(2) A motorized scooter or micromobility device is not required to satisfy the registration and insurance requirements of s. 320.02 or the licensing requirements of s. 316.605."

36

same Policy,[27] according to State Farm's argument, would have covered the Collision had it occurred on or before June 17, 2019 (when the electric scooter was not statutorily defined as a motorized scooter)[28]. Such reasoning flies in the face of common sense. Changes to an insurance policy, which is a contract between an insured and an insurer, cannot be subject to legislative changes to statutes which are being made for reasons that have absolutely nothing to do with the insurance policy. The Spanglers purchased UM Coverage to protect them if they were in an accident with an uninsured vehicle. State Farm sold them that coverage. If State Farm wanted to limit coverage by restricting the definition of the term "land motor vehicle" in the insurance policy it could have done so. It did not. It cannot now rely on a recently changed statute which just happens to support the denial of coverage. Presumably, if the statute had not been changed, then State Farm would not rely upon this statute but would argue that the Court should look at some other statute. In fact, that is precisely what State Farm is doing here, arguing that

---

[27] As noted above, the Policy was initially issued June 22, 2015, with the same coverages as those still in effect as of the June 22, 2019 through December 22, 2019 Policy period. See Declarations and State Farm's Responses at ¶¶5 and 6. (Doc. 27-2; A163.) (Doc. 27-2 and 27-1 at 29 (¶¶5 and 6); A163 and 159.)

[28] *Marchesano v. Nationwide Property and Casualty Insurance Co.*, 506 So.2d 410, 413 (Fla. 1987)("Absent a notice to the contrary, the insured is entitled to assume that the terms of the renewed policy are the same as those of the original contract." (citation omitted).

various statutes all with different definitions of motor vehicle should be utilized to interpret an insurance policy that it constructed.

- Florida Statutes §320.01(1)(a)

State Farm also lists as a "Relevant Statute" (Doc. 1 at 6 (¶24); A11.) Florida Statutes §320.01(1)(a). Again, this statute has nothing to do with insurance policies and in fact it is taken from Chapter 320 dealing with Motor Vehicle Licenses. In the preamble, the statute specifically provides that "[a]s used in the Florida Statutes, except as otherwise provided, the term: . . . ." Accordingly, the definitions set forth therein are to be used only to define terms in the Florida Statutes (unless the term is defined differently elsewhere). The statute does not support the use of any definitions therein to be used to interpret insurance policies.

The statute, in effect on June 18, 2019 (four days before the Policy became effective) provides as follows:

> (1) "Motor vehicle" means:
>
> (a) An automobile, motorcycle, truck, trailer, semitrailer, truck tractor and semitrailer combination, or any other vehicle operated on the roads of this state, used to transport persons or property, and propelled by power other than muscular power, but the term does not include traction engines, road rollers, motorized scooters, micromobility devices, personal delivery devices and mobile carriers as defined in s. 316.003, special mobile equipment as defined in s. 316.003, vehicles that run only upon a track, bicycles, swamp buggies, or mopeds.

Again, generally speaking, the statute supports that an Electric Scooter is a motor vehicle (it is a vehicle used to transport persons or property and is propelled by power other than muscular power). It would only <u>not</u> be a motor vehicle because of the way "motorized scooter" (an excluded vehicle under the statute) was redefined on June 18, 2019. See the detailed argument on this issue above. Moreover, the very term "motorized scooter" was actually added, for the first time, to this statute on June 18, 2019. Therefore, State Farm's position must be that prior to June 18, 2019, both this statute (Florida Statutes §320.01(1)(a)) and Florida Statutes §316.003(43) would have allowed coverage for the Collision but after June 18, 2019 these statutes no longer supported coverage for the Collision. Again, State Farm's argument defies common sense and should be rejected.

- Florida Statutes §627.041(8)

State Farm also lists as a "Relevant Statute" (Doc. 1 at 8 (¶26); A13.) Florida Statutes §627.041(8). Here, while this statute does have something to do with insurance policies, it refers only to the rates charged for insurance. In the preamble to Florida Statutes §627.041, the statute specifically provides that the definitions detailed therein define terms "[a]s used in this part . . . ." "This part" refers to Florida Statutes §§627.011-627.381 ("Part I – Rates and Rating Organizations"). Florida Statutes §627.011 provides that "[t]his part of this chapter may be referred

39

to as the 'Rating Law.'"    Moreover, Florida Statutes §627.021 provides with respect to scope that "[t]his part[29] of this chapter applies only to property, casualty, and surety insurances on subjects of insurance resident, located, or to be performed in this state."

In particular, Florida Statutes §627.041(8) provides as follows:

> (8) "Motor vehicle insurance" means a policy of motor vehicle insurance delivered or issued for delivery in the state by an authorized insurer:
> (a) Insuring a natural person as the named insured or one or more related individuals resident of the same household, or both; and
> (b) Insuring a motor vehicle of the private passenger type or station wagon type, which motor vehicle is not used as public or livery conveyance for passengers or rented to others, or insuring any other four-wheeled motor vehicle having a capacity of 1,500 pounds or less which is not used in the occupation, profession, or business of the insured, other than farming;
> other than any policy issued under an automobile insurance risk apportionment plan or other than any policy covering garage, automobile sales agency, repair shop, service station, or public parking place operation hazards.

---

[29] This statute was amended February 12, 2020 to change the word "chapter" to "part" to correct a prior legislative scrivener's error.  The Florida Supreme Court in *Essex Insurance Company v. Zota,* 985 So.2d 1036, 1042 (Fla. 2008) identified the scrivener's error and noted that "relevant legislative materials, as well as the structure and organization of chapter 627, demonstrate that the exclusionary provisions of section 627.021(2) [and consequently Florida Statutes §627.041] only relate to 'the ratings laws of *part 1* [Part I – Rates and Rating Organizations], chapter 627, F.S.'"  (citations omitted).

It is unclear why State Farm believes this statute supports its position. As detailed above, the definitions set forth in this statute apply only to Florida Statutes §§627.011-627.381, not Florida Statutes §627.727 (uninsured motorist coverage). Moreover, there is no question but that the Policy at issue was "motor vehicle insurance" as it insured A. Spangler and R. Spangler (Florida Statutes §627.041(8)(a)) and the 2015 Nissan Altima (Florida Statutes §627.041(8)(b)) operated by A. Spangler. See Complaint at ¶¶11, 15 and 18. The fact that the Policy at issue is "motor vehicle insurance" has nothing to do with whether the Policy provides coverage for an uninsured "land motor vehicle" which struck the insured, A. Spangler's, vehicle.[30] This statute does not illuminate the issue before the Court; to wit: whether the electric scooter is a "land motor vehicle" requiring UM Coverage.[31]

---

[30] In fact, Florida Statutes §627.727(1) requires that motor vehicle insurance policies provide uninsured motorist coverage.

[31] State Farm also identifies Florida Statutes §627.727(3) as a "Relevant Statute." (Doc. 1 at 9 (¶27); A14). The relevance of cited subsection of this statute is unclear. State Farm cites only to the portion of the statute dealing with "underinsured" vehicles also being considered "uninsured" vehicles for the purposes of coverage. The Electric Scooter here had no insurance and was therefore "uninsured" not "underinsured" and therefore this portion of the statute does not even apply to the issues before the Court. See *State Farm Mut. Auto. Ins. Co. v. Curran*, 135 So.2d 1071, 1076 (Fla. 2014)("Pursuant to section 627.727(1), Florida Statutes (2007), insurers issuing motor vehicle policies in Florida are mandated by statute to offer uninsured motorist coverage unless the insured has

- Florida Statutes §627.732(3)

Finally, State Farm also lists as a "Relevant Statute" (Doc. 1 at 9-10 (¶28); A14-15.) Florida Statutes §627.732(3). Again, here, while this statute does have something to do with insurance policies, it refers only to the Florida Motor Vehicle No-Fault Law. In the preamble to Florida Statutes §627.732, the statute specifically provides that the definitions detailed therein define terms "[a]s used in ss. 627.730-627.7405." Florida Statutes §627.730 provides that "[s]ections 627.730-627.7405 may be cited and known as the 'Florida Motor Vehicle No-Fault Law.'" Accordingly, the definitions set forth therein are to be used only with respect to the Florida Motor Vehicle No-Fault statutes.

Florida Statutes §627.732 provides in part that a motor vehicle "means any self-propelled vehicle with four or more wheels. . . ." As set forth above, in *Grant v. State Farm Fire and Casualty Company,* 638 So.2d 936 (Fla. 1994) the Florida Supreme Court already rejected this argument allowing a two-wheeled motorcycle to meet the definition of motor vehicle under State Farm's uninsured motorist coverage exclusion.

---

expressly rejected the coverage. The term "uninsured motor vehicle" includes an underinsured motor vehicle, which occurs where the liability insurer has provided lower bodily injury liability limits than the damages sustained by the person legally entitled to recover damages. § 627.727(3)(b), Fla. Stat. (2007).")

42

## D. Policy Exclusion

Finally, State Farm alleges in the Complaint (Doc. 1 at 14 (¶41); A14.) that the Policy excludes from the definition of uninsured motor vehicles, land motor vehicles which are "designed for use primarily off roads except while on public roads. . ." See Policy at 24-25 and Amendatory Endorsement at 6 of 11. (Doc. 1-1 at 24-25 and Doc. 1-2 at 6; A44-45 and A74.) Obviously, this exclusion is inapplicable because the exception requires the inclusion in the term "land motor vehicle" of vehicles designed for use primarily off public roads, <u>when being used on a public road</u>. Here, there is no dispute but that the Collision occurred on a public road and therefore this exclusion does not apply.

The district court rejected the Spanglers' argument regarding the applicability of the exception to the exclusion noting that:

> But *Carguillo* concerned a Suzuki motorcycle, not a Razor Scooter. And the question presented in that case is different from the one presented here. In *Carguillo,* the issue was whether an insurer could exclude an off-roading "land motor vehicle" designed primarily for off-road use from UM coverage under the Financial Responsibility Law. *See id*. at 277. In other words, is a "land motor vehicle" designed primarily for off-road use *still* a "motor vehicle" under the Financial Responsibility Law—and therefore an "uninsured motor vehicle" for UM purposes—when it is off-road? *Carguillo* ruled that a "land motor vehicle" designed primarily for off-road use *is not* a "motor vehicle" under the Financial Responsibility Law to the extent that it operates off-road. Conversely, *Carguillo* indicated that a "land motor vehicle"

43

designed primarily for off-road use *is* a "motor vehicle" under the Financial Responsibility Law to the extent that it operates on a public road. In fact, Defendants recognize that *Carguillo* implied that the Suzuki would have been a "land motor vehicle" under the insurance policy "if the accident had occurred on a public roadway."

(Doc. 42 at 16-17; A440-441)(citation omitted).

The district court correctly summarizes the findings and/or implicit findings in *Carguillo*. Although not at issue, the Florida Supreme Court must have determined that the off-road Suzuki motorcycle was in fact a "land motor vehicle" in the first instance since the exclusion it was analyzing specifically provided that "uninsured motor vehicle does not include a land motor vehicle . . . (5) designed for use mainly off public roads except while on public roads." *Carguillo,* 529 So.2d at 277.[32] The Court specifically held as follows: "[w]e therefore hold that a <u>vehicle</u> designed primarily for off-road use can be excluded from uninsured motorist coverage because it is not a "motor vehicle" within the definition of the financial responsibility law." *Id*. at 278. (emphasis added) Although not specified in the opinion, when the Court uses the term "vehicle," emphasized above, it must be referring to the term "land motor vehicle" since, again, in the first instance the Court agreed that the Suzuki motorcycle was a land motor vehicle. Therefore, the

---

[32] The Suzuki motorcycle was "registered and titled by the state, but [was] not licensed for operation upon the public highways." *Carguillo*, 529 So.2d at 277.

Court's holding can be restated as "[w]e therefore hold that a [land motor] vehicle designed primarily for off-road use can be excluded from uninsured motorist coverage because it is not a "motor vehicle" within the definition of the financial responsibility law." *Id*.

The district court then goes on to define the issue that supports its rejection of the Spanglers' argument regarding the applicability of the exception to the exclusion as follows:

> Here, however, the issue is whether the Scooter is a "land motor vehicle" under the Financial Responsibility Law *at all*. Defendants put the cart before the horse—the Court must determine whether the Scooter "is designed and required to be licensed for use upon a highway" before it can consider where the collision occurred.

(Doc. 17; A.441)

Respectfully, that is not the issue.  In *Carguillo*, the Florida Supreme Court found that the primarily off road Suzuki motorcycle, registered and titled in the state but not licensed for operation on a public highway, was nonetheless a "land motor vehicle."  It made this initial determination before ever considering Florida Statutes §324.021(1).  Accordingly, presumably, it would make the same finding with respect to the Electric Scooter (that it is a "land motor vehicle").  Only after finding that it was a "land motor vehicle" did it hold that the exclusion was allowed because the minimum UM Coverage required by statute was not violated

45

because the financial responsibility law did not require the off road Suzuki motorcycle to be insured.[33]

Accordingly, again, *Carguillo* was not addressing the extent of coverage, but the applicability of an exclusion. There is no question but that State Farm could have excluded coverage for the Electric Scooter. But the policy as stated covers injuries resulting from a collision with an Electric Scooter. Therefore, the Spanglers should be afforded the coverage they purchased.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, Appellants respectfully request that the Court reverse the district court's order granting State Farm's motion for summary judgment and enter and order granting summary judgment in favor of the Appellants.

Dated: October 7, 2021

Gregory D. Swartwood, Esquire
Florida Bar No. 858625

---

[33] In part, in *Carguillo*, 529 So.2d at 278, the Court found:

> In this case, the owner of the Suzuki motorcycle was not required to maintain liability insurance on the cycle because it is not a motor vehicle under Section 324.021(1). Thus, the policy provision at hand does not reduce the UM coverage below the level of protection that would have been provided if the owner of the Suzuki had complied with the financial responsibility law.

46

The Nation Law Firm, LLP
570 Crown Oak Centre Drive
Longwood, FL  32750
Telephone:  (407) 339-1104
Facsimile:  (407) 339-1118
E-mail:  gswartwood@nationlaw.com
Attorneys for Appellants

47

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains a total of 12,478 words and excluding those parts exempted by Fed. R. App. P. 32(f), contains a total of 11,340 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Gregory D. Swartwood

# **CERTIFICATE OF SERVICE**

**21-12062**        *State Farm Mutual Auto Ins. Co. v. Anna Spangler*

I hereby certify that I  have served a true and correct copy of the within and foregoing Appellant's Brief to be served on both counsel for Defendants-Appellants and on the below listed Counsel for Plaintiff-Appellee via Electronic Mail generated by the Court's electronic filing system (CM/ECF) pursuant to Rule 25 of the Federal Rules of Appellate Procedure.

CARRI S. LEININGER
MAUREEN MARTINEZ
WILLIAMS LEININGER & COSBY, PA
11300 US Highway 1, Suite 300
North Palm Beach, Florida 33408
(561) 615-5666

*Plaintiff-Appellee*

I certify that an electronic copy was uploaded to the Court's electronic filing system. Four (4) hard copies of the foregoing  were sent to the Clerk's Office by FedEx Next Business Day delivery to:

Clerk of Court
UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
56 Forsyth St., N.W.
Atlanta, GA 30303
(404) 335-6100

on this 7th day of October 2021.

/s Nicole Garcia
Nicole Garcia