IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

DOCKET NO.: 21-12062-HH

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Appellee,

v.

ANNA BEVILACQUA SPANGLER and RICHARD DALE SPANGLER,

Appellants.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT MIDDLE
DISTRICT OF FLORIDA

**BRIEF OF APPELLEE STATE FARM
MUTUAL AUTOMOBILE
INSURANCE COMPANY**

Carri S. Leininger, Esq.
Florida Bar No.: 0181022
Maureen Martinez, Esq.
Florida Bar No.: 0116564
Williams, Leininger & Cosby, P.A.
11300 US Highway One, Suite 300
North Palm Beach, FL 33408
Telephone No.: (561)615-5666
Facsimile: (561)615-9606
Counsel for Appellee State Farm Mutual
Automobile Insurance Company

**APPELLEE'S CERTIFICATE OF INTERESTED PERSONS**

The Appellee, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, hereby discloses the following Certificate of Interested Persons:

1.    The name of each person, attorney, association of persons, firms, law firm, partnership and corporations that has or may have an interest in the outcome of this action, including subsidiaries, conglomerates, affiliates, parent corporations, publicly-traded company that owns 10% or more of a party's stock, and all other identifiable legal entities related to any party in this case as follows:

   a.  Byron, Paul G., United States District Court Judge

   b.  Hoffman, Leslie R., United States District Court Magistrate Judge

   c.  Leininger, Esq., Carrie S., counsel for Appellee State Farm Mutual Automobile Insurance Company

   d.  Martinez, Maureen, Esq.   counsel for Appellee State Farm Mutual Automobile Insurance Company

   e.  Spangler, Anna Bevilacqua, Appellant

   f.  Spangler, Richard Dale, Appellant

   g.  State Farm Mutual Automobile Insurance Company, Appellee

   h.  Swartwood, Esq., Gregory D., counsel for Appellants

   i.  The Nation Law Firm, counsel for Appellants

j.  Williams, Leininger & Cosby, P. A., counsel for Appellee State Farm
Mutual Automobile Insurance Company

## CORPORATE DISCLOSURE STATEMENT

Appellee is not aware of an entity whose publicly-traded stock, equity, or debt may be substantially affected by the outcome of the proceedings.

## STATEMENT OF ORAL ARGUMENT

State Farm Mutual Automobile Insurance Company does not request oral argument on this appeal. The issue on appeal is the district court's order granting summary judgment to State Farm Mutual Automobile Insurance Company. Oral argument is not required, and unlikely to be helpful, because the order is consistent with existing Florida Supreme Court precedent.

# TABLE OF CONTENTS

**Page**

STATEMENT OF ORAL ARGUMENT ................................................................. i

TABLE OF CONTENTS ...................................................................................... ii

PRELIMINARY STATEMENT............................................................................ 1

STATEMENT OF THE ISSUES.......................................................................... 2

STATEMENT OF THE CASE AND FACTS....................................................... 3

SUMMARY OF THE ARGUMENT .................................................................... 8

STANDARD OF REVIEW ................................................................................. 11

ARGUMENT ...................................................................................................... 12

I.    The Razor Scooter is Not Designed or Required to be Licensed for Use on Florida's Public Roads ................................................................................... 12

II.    The Definition of Motor Vehicle Found in Florida's Financial Responsibility Law is the Proper Definition .................................................................................. 14

III.    The Definition of Motor Vehicle Found in Florida's Financial Responsibility Law is the Basis of State Farm's Motion for Summary Judgment.......................... 26

CONCLUSION ................................................................................................... 28

CERTIFICATE OF COMPLIANCE WITH FONT STANDARD ........................ 29

CERTIFICATE OF SERVICE ........................................................................... 29

ii

# TABLE OF AUTHORITIES

*Alvarez v. Royal Atl. Developers, Inc.,*
610 F.3d 1253, 1263 (11th Cir. 2010) .................................................... 11

*Amica Mutual Insurance Company v. Willis,*
235 So.3d 1041, 1043 ............................................................................. 28

*Carguillo v. State Farm Mutual Automobile Insurance Company*
529 So.2d 276 (Fla. 1988) ........................................................ 22,24,27,28

*Foremost Insurance Company v. Warmuth,*
649 So.2d 939 (Fla. 4th DCA) ................................................................ 23

*Geico Genera Ins. Co. v. Schwinn,*
No. 8:04CV1485, 2006 WL 1529092, at *2,*6
(M.D. Fla. May 30, 2006) ....................................................................... 18

*Grant v. State Farm & Casualty Company,*
638 So.2d 936 (Fla. 1994) ........................................................ 17,19,20,21,27

*Michael F. Branche v. Airtran Airways, Inc.,*
314 F.Supp.2d 1194, 1195 (M.D. Fla. 2004) ......................................... 23

*Mullis v. State Farm Mutual Automobile Insurance Company*
252 So.2d 229 (Fla. 1971) ................................................................... 23,28

*National Fire Insurance Co. of Hartford v.*
*Fortune Construction Co.,*
320 F.3d 1260, 1267 (11th Cir. 2003) .................................................... 11

*Provau v. State Farm Mutual Automobile Insurance Company,*
772 F.2d 817, 820 (11th Cir. 1985) ........................................................ 11

*Shapiro v. Associated Int'l Ins. Co.,*
899 F.2d 1116, 1118 (11th Cir. 1990) .................................................... 23

iii

*Standard Marine Insurance Company v. Allyn,*
    333, So.2d 497 (Fla. 1st DCA 1976)........................................... 17,18

*State Farm v. Baldassini,*
    909 F. Supp.2d 1363 (S.D. Fla. 2012)....................................... 14

*State Farm v. Baldassini,*
    545 Fed. Appx. 842 (11th Cir. 2013)....................................... 14

*State Farm v. Laforet,*
    658 So.2d 55, 65 (Fla. 1995)..................................................... 21

*Vector Prods., Inc. v. Hartford Fire Ins. Co.,*
    397 F.3d 1316, 1318 (11th Cir. 2005)....................................... 11

**FLORIDA STATUTES**

*§324.011*

iv

## PRELIMINARY STATEMENT

The Appellee, State Farm Mutual Automobile Insurance Company will be referred to as "State Farm."

The Appellants, Anna Bevilacqua Spangler will be referred to as "Spangler," Richard Dale Spangler will be referred to as "R. Spangler," and collectively referred to as "Defendants."

References to the record will refer to the Document on the district court's trial docket, as [Doc ] followed by the page number as it appears in the header generated by the district court's electronic filing system, as [Pg. 1]. For example, [Doc 1, Pg. 2] indicates Document Number 1, Page 2.

References to Appellant's Initial Brief will be referred to as [IB] followed by the corresponding page number.

## STATEMENT OF THE ISSUES

Whether this Court should affirm the district court's grant of summary judgment finding the Razor Pocket Mod Electric Scooter was not an Uninsured Motor Vehicle and that Uninsured Motor Vehicle (UM) coverage was not available to Anna Bevilacqua Spangler because:

1) The Razor Pocket Mod Electric Scooter was not designed for use upon a highway;

2) The Razor Pocket Mod Electric Scooter was not designed and required to be licensed for use upon a highway under Florida's Financial Responsibility Law;

3) The Razor Pocket Mod Electric Scooter is not a motor vehicle pursuant to Florida law and the terms of the State Farm Car Policy;

4) The Razor Pocket Mod Electric Scooter is not an Uninsured Motor Vehicle pursuant to Florida law and the terms of the State Farm Car Policy.

## STATEMENT OF THE CASE AND FACTS

### I.    NATURE OF THE CASE

This case arises out of an accident between a Razor Scooter and a car. Spangler was driving her Nissan Altima sedan when a Razor Pocket Mod Electric Scooter ("Razor Scooter") hit the side of her car.  Spangler claims the contact caused her injury.

The Razor Scooter was owned and operated by Edward Allen Levesque ("Deceased"). Spangler's car was insured under a State Farm Car Policy ("Policy"). Spangler made a claim for Uninsured Motor Vehicle Coverage ("UM Coverage") benefits under the Policy. The Policy provides UM Coverage if the owner or driver of an Uninsured Motor Vehicle caused the injuries. State Farm denied Spangler's claim for UM Coverage because the Razor Scooter is not an Uninsured Motor Vehicle.

### II.    STATEMENT OF THE CASE AND FACTS

#### A.    The Complaint

State Farm filed a Complaint for Declaratory Relief ("Complaint") on February 28, 2020, where it alleged the Razor Scooter was not designed for or required to be licensed for use on Florida Highways, and not a motor vehicle pursuant to Florida Statutes and the Policy [Doc 1, Pg. 1-15] As such, State Farm

3

requested the district court declare the Razor Scooter, 1) is not a Motor Vehicle [Doc 1, Pg. 1-13] and, 2) is not an Uninsured Motor Vehicle. [Doc 1, Pg. 1-12]

State Farm asserted the Razor Scooter was neither a Motor Vehicle nor an Uninsured Motor Vehicle pursuant to Florida statutes and the terms of the Policy. [Doc 1, Pg. 1-15] State Farm included a "Relevant Statutes" section that referred to several Florida statutes and how those statutes define motor vehicle as well as other terms such as moped, electric personal assistive mobility device, motorized disability access vehicle, private passenger motor vehicle, and bicycle path. [Doc 1, Pg. 5-10] State Farm invoked Florida's Financial Responsibility Law, F.S. §324.021(1) ("FRL") when asserting the Razor Scooter "was not designed for or required to be licensed for use on Florida highways." [Doc 1, Pg. 13] The Defendants filed an Answer to the Complaint. [Doc 11]

**B.    Discovery**

The parties exchanged written discovery. State Farm subpoenaed records from the manufacturer of the Razor Scooter, Razor USA, LLC. Additionally, State Farm obtained and filed an affidavit from Razor USA, LLC that explained the function and limitations of the Razor Scooter. [Doc 35-1, Pg. 1-3]

**C.    Defendants' Motion for Summary Judgment**

Defendants filed their Motion for Summary Judgment on January 15, 2021. [Doc 27] In their motion they conceded the Razor Scooter was not designed for or required to be licensed for use on Florida Highways and was not a motor vehicle as defined by the Policy (found in the Definitions section of the Policy.) [Doc 27, Pg. 8]. Defendants also asserted the Policy's definition of Motor Vehicle was not applicable to the UM Coverage section of the Policy[1]. [Doc 27, Pg. 8] The Defendants argued an Uninsured Motor Vehicle is simply *any* land motor vehicle [Doc 27, Pg. 9-10], the "type of vehicle that is used on land" and "also operated by a motor." [Doc 27, Pg. 9-10]

The parties filed a Joint Stipulation as to Material Facts on February 19, 2021. [Doc 29] The agreed upon undisputed facts included the following:

- The Razor Scooter was a Razor Pocket Mod Electric Scooter [Doc 29 Pg. 3]

- The Razor Scooter was not registered with or have a license tag issued by the Florida Department of Highway Safety and Motor Vehicles, and was

_____

[1] Specifically, Spangler's asserted, "..the definition of motor vehicle has nothing to do with whether the vehicle is a "land motor vehicle" under the UM coverage..." [Doc 27, Pg. 8]

not insured, self-insured, or bonded for bodily injury liability [Doc 29,

Pg. 4]

State Farm filed its response in opposition to Defendants' Motion for

Summary Judgment on February 16, 2021. [Doc 28] State Farm argued Defendants

were incorrectly stating the defined term Uninsured Motor Vehicle meant *any* land

motor vehicle. [Doc 28, Pg. 15] And, if the district court was inclined to reject its

argument that the definition of Motor Vehicle as found in the Definitions section of

the Policy applied to the UM Coverage section of the Policy, the definition of

Motor Vehicle as found in Florida's FRL should be used. [Doc 28, Pg. 18] Last,

State Farm argued the Razor Scooter was not an Uninsured Motor Vehicle because

it was not designed to be used on public roads, ever. [Doc 28, Pg. 19-20]

State Farm's filing included composite Exhibit B. [Doc 28-2, Pg. 6-23]

Exhibit B consisted of copies of documents produced by Razor USA, LLC. [Doc

28-2, Pg. 6-23] However, due to the quality of the images initially filed, State Farm

filed its Notice of Filing Legible Copy of Exhibit B. [Doc 34][Doc 34-1, Pg. 6-27]

### D.    State Farm's Motion for Summary Judgment

State Farm filed its Motion for Summary Judgment ("Motion") on March 5,

2021. [Doc 35] The Motion consisted of two theories - the Razor Scooter is neither

a Motor Vehicle nor an Uninsured Motor Vehicle under the Policy and Florida

law. [Doc 35, Pg. 1-18] In support, State Farm relied on the UM Coverage section of the Policy[2].

The documents filed with the Motion contained several undisputed facts, including facts found in Florida Highway Patrol's traffic crash report and traffic homicide investigative report [Doc 35-3, Pg. 1-10][Doc 35-4, Pg. 1-7], that the Razor Scooter was not designed, manufactured, or equipped with a tail lamp, taillight, tail bulb, brake light, turn signals, or mirrors [Doc 35-1], that the Razor Scooter was not assigned and did not display a Vehicle Identification Number (VIN) [Doc 35-1, Pg. 3][Doc 35-4, Pg. 7], that the Razor Scooter was not registered with or have a license tag issued by the Florida Department of Highway Safety and Motor Vehicles [Doc 35-4, Pg. 7], and that Razor USA, LLC issued several warnings to owners and/or prospective operators of the Razor Scooter such as not to ride it on streets [Doc 35-1, Pg. 1-22][Doc 35-6, Pg. 1,3] and to never use it near motor vehicles [Doc 35-1, Pg. 1-22][Doc 35-6, Pg. 1,3]. The Defendants filed their response [Doc 37] to which State Farm replied [Doc 40].

---

[2] State Farm relied upon and argued that the definition of Motor Vehicle defined for use throughout the entire Policy applied to the Underinsured Motor Vehicle Coverage section of the Policy. However, the district court disagreed with this position, and State Farm did not appeal the ruling. Therefore, State Farm will not be addressing this issue in its Brief.

7

**E.    Order**

On May 20, 2021, the district court issued an Order Denying Defendants'
Motion for Summary Judgment ("Order") and, granted in part and denied in part
State Farm's Motion for Summary Judgment. [Doc 42] Specifically, the district
court found as follows:

- Rejected State Farm's position that the definition of Motor Vehicle found
  in the Definitions section of the Policy (for use throughout the Policy)
  applied to UM Coverage. [Doc 42, Pg. 1-9]

- The Razor Scooter was not designed and required to be licensed for use
  upon Florida's Highways.  [Doc 42, Pg. 9-17]

- The Defendants were on notice of and expected the use of Florida's FRL
  in this matter.  [Doc 42, Pg. 9-12]

- The Razor Scooter is not an Uninsured Motor Vehicle under the terms of
  the Policy and Florida Law [Doc 42, Pg. 13-19]

Final Judgement was entered in favor of State Farm [Doc 43] This appeal
followed. [Doc 47]

## SUMMARY OF THE ARGUMENT

The Razor Scooter was not designed for or required to be licensed for use
upon Florida's roads. It is undisputed the Razor Scooter was not manufactured

8

with or equipped with a headlight, brake light, taillights, or mirrors. Additionally, it is undisputed the Razor Scooter was not issued a Vehicle Identification Number (VIN) and was not registered or licensed by the State of Florida. Therefore, it is undisputed the Razor Scooter cannot be (lawfully) used on Florida's public roads. The district court correctly found the Razor Scooter was not designed and required to be licensed for use on Florida's public roads.

The Policy defines Motor Vehicle in the Definitions section of the Policy for use throughout the entire policy. However, the district court ruled it did not apply. As a result, the Policy's definition of the term motor vehicle in one portion of the Policy is not applicable to the UM Coverage section of the Policy- the term land motor vehicle and/or motor vehicle is an undefined term in the UM Coverage section of the Policy.

Florida courts have long held that when interpreting an insurance contract, the definitions found in the policy itself and the plain language of the policy are to be used. However, UM Coverage is an exception to the rule.  It is well settled that when a court is interpreting a creature of statute such as UM Coverage, the corresponding insurance statutes should be construed along with the policy language. Here, the district court was asked to interpret whether the Razor Scooter, that is marketed/sold to teenagers (younger than 15), is not permitted to be used on

9

Florida's public roads, and was not insured, is an Uninsured Motor Vehicle under the Policy. In order to answer that question, it had to be determined whether it was a motor vehicle in the context of UM Coverage and Florida's FRL.

The district court relied on Florida Supreme Court precedent when it looked to Florida's FRL for the definition of the term motor vehicle. Florida's FRL is intended to protect drivers on Florida's roads. It requires owners/drivers to have liability insurance to compensate those they injure. Florida's uninsured motorist law is the counterpart to the FRL. Uninsured motorist laws are intended to protect those that were hurt by another driver that did not have the insurance required by FRL. Thus, uninsured motorist coverage is reciprocal to Florida's FRL. To that end, it is meant to replace the coverage for those persons/vehicles that could have/should have been insured but were not. Therefore, when determining what an Uninsured Motor Vehicle is in the context of UM Coverage, the definition of Motor Vehicle found in Florida's FRL is appropriate. The courts have affirmed this time and time again. Defendants have not provided a case holding otherwise.

Florida's FR Law defines Motor Vehicle as a vehicle which is designed and required to be licensed for use upon a highway. It is undisputed the Razor Scooter was not designed for and not required to be licensed for use upon a highway and, was not registered or licensed. Therefore, the Razor Scooter is not a Motor Vehicle

as defined by Florida's FRL. As a result, the Razor Scooter is not a motor vehicle under the terms of the UM Coverage section of the Policy. Defendants have not cited to any cases that hold a Razor Scooter is a motor vehicle, or an Uninsured Motor Vehicle, under Florida law.

Pursuant to Florida substantive law, the Razor Scooter is not a motor vehicle or an Uninsured Motor Vehicle. The district court did not err in granting summary judgment.

## STANDARD OF REVIEW

The Court reviews the district court's grant of summary judgment *de novo. Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253, 1263 (11th Cir. 2010). The Court applies "the same legal standards that bound the district court." *National Fire Insurance Co. of Hartford v. Fortune Construction Co.*, 320 F.3d 1260, 1267 (11th Cir. 2003).

The district court's interpretation of an insurance contract is a question of law and reviewed by this Court *de novo. Vector Prods., Inc. v. Hartford Fire Ins. Co.*, 397 F.3d 1316, 1318 (11th Cir. 2005). "Construction of insurance contracts is governed by substantive state law." *Provau v. State Farm Mutual Automobile Insurance Company*, 772 F.2d 817, 820 (11th Cir. 1985).

11

## ARGUMENT

**I. The Razor Scooter is Not Designed or Required to be Licensed for Use on Florida's Public Roads**

### A. The Razor Scooter Was Designed and Manufactured to be Off Florida's Public Roads

The district court concluded the Razor Scooter was not designed for use primarily off public roads, it was designed to not be on public roads at all. [Doc 42, Pg. 13-15] In reaching this conclusion the district court relied on numerous undisputed facts demonstrating what the Razor Scooter is, and what it is not, including:

- It was not designed, manufactured, or equipped with:
  - A tail lamp, taillight, or tail bulb [Doc 35-1, Pg. 3,17] [Doc 35-5, Pg. 2-13]
  - Turn lights/signals [Doc 35-1, Pg. 3,17] [Doc 35-5, Pg. 2-13]
  - Mirrors [Doc 35-1, Pg. 3,17] [Doc 35-5, Pg. 2-13]
  - Brake light [Doc 35-1, Pg. 3,17] [Doc 35-5, Pg. 2-13]
- It was not assigned or display a Vehicle Identification Number (VIN) [Doc 35-1, Pg. 3][Doc 35-4, Pg. 7][Doc 35-5, Pg. 2-13]

12

- It did not display or otherwise have a license tag issued by the Florida Department of Highway Safety and Motor Vehicles. [Doc 35-4, Pg. 7]

- It was not registered with the Florida Department of Highway Safety and Motor Vehicles. [Doc 29, Pg. 4][Doc 35-4, Pg. 7]

- Razor USA, LLC recommended checking local laws or regulations that may affect the locations where it may be used. [Doc 35-6, Pg. 1,3]

- Razor USA, LLC warned owners and riders not to ride it at night or in low visibility conditions. [Doc 35-6, Pg. 3]

- The minimum recommended age for riding the Razor Scooter is 13. [Doc 35-1, Pg. 5]

- The Razor Scooter had two warning decals that warned:

  o "TRAFFIC CAN BE FATAL DO NOT RIDE ON STREETS OR AROUND CARS" [Doc 35-1, Pg. 21][Doc 35-6, Pg. 3]

  o "Never use near motor vehicles" [Doc 35-1, Pg. 21][Doc 35-6, Pg. 3]

In addition to the undisputed facts specifically cited to in the Order, the following additional fact is also undisputed:

- The Razor Scooter is marketed to thirteen-year-old children. [Doc 35-6, Pg. 2]

13

Based on the above it is undisputed the Razor Scooter was not manufactured or equipped with components necessary to lawfully be on Florida's public roads. As a result, it was not designed to be operated on Florida's public roads, *ever*. *State Farm v. Baldassini*, 909 F. Supp.2d 1363 (S.D. Fla. 2012)(holding, *designed for use* refers to the design intent of the designing manufacturer, not the user's.)(emphasis added); aff'd *State Farm v. Baldassini*, 545 Fed. Appx. 842 (11th Cir. 2013)(When considering whether a golf cart was "designed for use mainly on public roads," the Court relied, in part, on the manufacturer issued owner's manual, and looked to whether the golf cart was equipped for operation on public streets as well as product warning against driving it on highways).

Defendants have not cited to any cases that suggest the Razor Scooter was designed and manufactured to be on Florida's public roads, or otherwise rebut any of the above referenced facts. Likewise, the Defendants have not cited to cases demonstrating the conclusion that the Razor Scooter was not designed or manufactured to be on Florida's roads is incorrect.

## II.    The Definition of Motor Vehicle Found in Florida's Financial Responsibility Law is the Proper Definition

At Defendant's urging, the district court concluded the definition of Motor Vehicle found in the Definitions section of the Policy did not apply to the UM

Coverage section of the Policy. [Doc 42, Pg. 9-10] Because the definition was deemed inapplicable, the district court had to look elsewhere for the meaning of the term motor vehicle as used in the UM Coverage section of the Policy.

### A.    Motor Vehicle is Not Defined in the Uninsured Motor Vehicle Coverage Section of the Policy

On appeal the Defendants assert the term motor vehicle is defined by the Policy. In support they are relying on the term land motor vehicle found within the definition of Uninsured Motor Vehicle. Specifically, the Defendants assert motor vehicle means land motor vehicle, and Uninsured Motor Vehicle means land motor vehicle. [IB 18] However, they do not, and cannot, point to a definition of the term motor vehicle because the term is not defined in the UM Coverage section of the Policy. In any event, the Policy defines Uninsured Motor Vehicle as follows:

> ***Uninsured Motor Vehicle*** means a land motor vehicle and a trailer attached to such land motor vehicle:
> 1. the ownership, maintenance, and use of which is:
>    a. neither insured, nor self-insured, nor bonded or bodily injury liability at the time of the accident; or
>    b. insured, self-insured, or bonded for bodily injury liability at the time of the accident; but
>       (1) the limits are less than required by the financial responsibility act of the state of Florida;
>       (2) the limits of liability of the insurance, self-insurance, or bond are less than the damages for ***bodily injury*** sustained by the ***insured***; or
>       (3) the entity providing the financial responsibility:

(a) denies that it provides liability coverage for compensatory damages that result from the accident; or
(b) is or becomes insolvent; or
    2. the owner or driver:
        a. of which could not reasonably have been identified;
        b. remains unknown; and
        c. that causes ***bodily injury*** to the ***insured***.
[Doc 1-1, Pg. 24-25]

Thus, the term motor vehicle, or land motor vehicle, as used in the applicable definition is *not* defined.

Defendants also claim the manner in which the term land motor vehicle is used in other portions of the Policy is relevant to what the term means in the UM Coverage section. Defendants refer to other portions of the Policy where the words are found, within definitions of other terms[3]. [IB 18] As an example, Defendants refer this Court to the definition of car, and how the term is used there. Defendants also look to the Bodily Injury Liability section, as well as the Death, Dismemberment and Loss of Sight Coverage sections of the Policy for additional examples. But, those other sections, or coverages, are not at issue here, uninsured motorist coverage is.

Essentially, Defendants argue the term land motor vehicle should be consistent throughout the Policy, that it should mean the same thing each time it is

---

[3] The term 'land motor vehicle' is not defined in any section of the Policy.

used throughout the Policy, no matter where or which coverage section it is located. However, the Florida Supreme Court has disagreed. *Grant v. State Farm and Casualty Company*, 638 So.2d 936 (Fla.1994)(Adopting Florida's FRL definition of motor vehicle for use in the UM coverage section of the policy despite the definition being different, or inconsistent, with existing definitions located in other sections of the policy.); *see also*, *Standard Marine Insurance Company v. Allyn*, 333, So.2d 497 (Fla. 1st DCA 1976)("Although in interpreting automobile insurance policy court has followed definitions given in policy itself where definition given is applicable to coverage assumed and not contrary to statutory limitations and requirements, where contract of insurance is entered into on matters surrounded by statutory limitations and requirements, parties are presumed to have entered into such agreement with reference to statute, and statutory provisions become part of contract."); *Grant v. State Farm Fire and Casualty Company*, 620 So.2d 778, 780 (Fla. 4th DCA 1993)("In our view, the reasoning in the foregoing cases and the public policy considerations of *Allyn* remain viable and continue to be applicable to the situation presented by the instant case."); aff'd, *Grant*, 638 So.2d 936, 938 (Fla.1994) Thus, how the term land motor vehicle is used in other coverage sections, does not define it for use in the

17

UM Coverage section, a matter surrounded by statutory limitations and requirements.

**B.    When Interpreting Uninsured Motor Vehicle Coverage Statutory Provisions Should be Read with the Contract**

For several pages Defendants argue courts must construe insurance contracts in accordance with the plain language of the policy. [IB 14- 21] Defendants cite to numerous cases pertaining to contract interpretation. The crux of Defendants' argument is that the district court should have only looked to terms within the policy. However, the cases Defendants cited do not involve interpretating Uninsured Motor Vehicle, land motor vehicle and/or motor vehicle for purposes of UM Coverage. Additionally, the district court explained that it was looking to statutes that are part of the insurance contract, relying on *Schwinn*. [Doc 42] *Geico General Ins. Co. v. Schwinn*, No. 8:04CV1485, 2006 WL 1529092, at *2,*6 (M.D. Fla. May 30, 2006)("[M]otor vehicle insurance is an area ... 'surrounded by statutory limitations[,]' [and so] [t]he Court ... presumes that the parties entered into the contract with knowledge of the statutory provisions, and those provisions became a part of the contract." )(*quoting, Allyn*, 333 So.2d at 499)("Standard... argues that it well settled that 'in interpreting an automobile insurance policy that courts have followed the definitions given in the policy itself.' Such contention is

well settled where the definition given is applicable to the coverage assumed and not contrary statutory limitations and requirements.") Defendants have not cited to a Policy definition for land motor vehicle or motor vehicle that is applicable to the UM Coverage section. Further, Defendants have not cited to a (uninsured motorist coverage) case that holds the district court should have relied on Policy definitions only.

### C.    Because Motor Vehicle is not Defined in the Uninsured Motor Vehicle Coverage Section of the Policy, the Meaning May Be Found Elsewhere

After concluding the definition of Motor Vehicle found in the Definitions section of the Policy did not apply to the UM Coverage section, the district court was left to interpret what motor vehicle meant in the context of the Policy's UM Coverage. The district court explained the definition of Uninsured Motor Vehicle found in the Policy "states an "uninsured motor vehicle" is a "land motor vehicle," which the Policy does not define. Accordingly, the Court must search elsewhere for "a sensible and appropriate definition"," relying on *Grant*. [Doc 42, Pg. 10] *Grant*, 638 So.2d at 938 ("If definition in one section of the automobile insurance policy is not applicable to coverage at issue in another section, courts may be compelled to search elsewhere for sensible and appropriate definition.")

19

To support the argument that *Grant* is not applicable, Defendants assert that here, unlike in *Grant*, the term motor vehicle *is* defined in the Policy's UM Coverage section. [IB 18] This is incorrect. In *Grant* the UM coverage section of the policy did not define motor vehicle. *Id.* The question was whether the motorcycle driven by the insured was a motor vehicle for uninsured motorist coverage. *Id.* Also, a UM coverage exclusion providing there was no coverage available to the insured if at the time of the accident he was occupying a motor vehicle he owned, but that was not insured under the policy, was at issue. *Id.* at 937. The PIP definition of motor vehicle defined a motor vehicle as having four or more wheels; the exclusion would not apply if his (two-wheeled) motorcycle was not a motor vehicle. *Id.* at 937. Thus, in hopes to obtain coverage the insured argued the definition of motor vehicle found in the PIP coverage section of the policy should be used to define the term in the UM coverage section. *Id.* at 937.

The Florida Supreme Court affirmed the PIP definition did not apply to the UM coverage section and agreed the definition of motor vehicle found in the FRL applied. *Id.* at 937. In doing so, the Court explained, "if the definition provided in one section of the policy is not applicable to the coverage at issue in another section, courts may be compelled to search elsewhere for a sensible and appropriate definition." Id. at 937.

20

The same scenario that existed in *Grant* exists here – Motor Vehicle as defined in the Definitions section of the Policy is not applicable to the UM Coverage section of the Policy. Thus, the district court did not err when it looked beyond the Policy for an appropriate definition.

**D.    The Definition of Motor Vehicle Found in Florida's Financial Responsibility Law is Sensible and Appropriate**

The district court's ultimate task was interpreting whether the Razor Scooter was an Uninsured Motor Vehicle under the terms of the Policy. Because uninsured motorist law/UM Coverage was at issue, the district court looked to the FRL. Florida's financial responsibility law provides as follows:

> 324.021. Definitions
> **(1) Motor Vehicle.**—Every self-propelled vehicle *that is designed and required to be licensed for use upon a highway*, including trailers and semitrailers designed for use with such vehicles, except......
> (emphasis added)
>       *§324.021(1), Fla. Stat. (2018)*

It is implicit a motor vehicle is used on Florida's highways (public roads), land. And, a motor vehicle is one designed and required to be licensed for use on public roads (land). Even so, Defendants compare the use of the FRL definition as a modification of the terms of the Policy. [IB 20] However, in making this argument Defendants disregard precedent. *State Farm v. Laforet*, 658 So.2d 55, 65 (Fla. 1995) (Wells, J., concurring)("It is well-settled in this State that *insurance*

21

*contracts are to be construed so as to include insurance statutes.*")(emphasis added); *see also, Carguillo v. State Farm Mutual Automobile Insurance Company,* 529 So.2d 276 (Fla. 1988)(Overruling the Second District court of Appeal's ruling that the Florida's Financial Responsibility Laws are not to be read *in pari materia* to the uninsured motorist laws). Thus, the FRL and Uninsured Motorist laws are to be construed along with the Policy's UM Coverage section.

It is important to note the legislature stated the purpose behind the FRL, "It is the intent of this chapter to recognize the existing privilege to own or operate a motor vehicle on the public streets and highways of this state when such vehicles are used with due consideration for others and their property, and to promote safety and provide financial security requirements for such owners or operators whose responsibility it is to recompense others for injury to person or property caused by the operation of a motor vehicle..." *§324.011, Fla. Stat.* Therefore, it is abundantly clear the requirement to insure pertains to vehicles that are *permitted* to be on Florida's public roads and highways (land).

"Uninsured motorist coverage or family protection is intended by the statute to protect the described insureds thereunder to the extent of the limits described in Section 324.021(7) 'who are legally entitled to recover damages, namely those from owners or operators of uninsured motor vehicles because of bodily

22

injury' ....." *Mullis v. State Farm Mutual Automobile Insurance Company*, 252 So.2d 229 (Fla. 1971)(holding, "Uninsured motorist coverage is statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage provided by the Financial Responsibility Law, i.e., to provide coverage where an uninsured motorist negligently inflicts bodily injury or death....."); *see also, Foremost Insurance Company v. Warmuth*, 649 So.2d 939 (Fla. 4th DCA 1995)("With regard to uninsured motorist coverage, it is Florida's public policy that every insured is entitled to recover for damages he or she would have been able to recover if offending motorist had maintained liability insurance.") Thus, for at least 30 years the FRL and Uninsured Motorist laws have been partners, so to speak, matched in intent and purpose. The FRL requires an owner/operator to obtain liability insurance to earn the privilege to drive a motor vehicle on Florida's roads. Florida's uninsured motorist laws step in when the owner/driver failed to secure the required insurance. Therefore, when the district court looked to the FRL to define motor vehicle it was logical and required. *Michael F. Branche v. Airtran Airways, Inc*, 314 F.Supp.2d 1194, 1195 (M.D. Fla. 2004) ("In diversity cases arising under Florida law, a federal court is bound by the law articulated by the Florida Supreme Court) *citing, Shapiro v. Associated Int'l Ins. Co.,* 899 F.2d 1116, 1118 (11th Cir.1990)

23

Interestingly, Defendants argue the Florida Supreme Court holding in *Carguillo* does not apply because it involved a question of whether a policy exclusion violated the *minimum* UM coverage required by statute[4]. [IB 20] *Carguillo*, 529 So.2d 276. Defendants also argue the issue here is State Farm failed to provide the *maximum* coverage paid for by the Defendant. [IB 29] This argument is flawed.

In *Carguillo*, the alleged uninsured motor vehicle that caused a death was a Suzuki motorcycle, a dirt bike, the kind designed *mainly* for use off public roads. *Id.* The accident happened on a dirt bike trail[5]. *Id.* The insured sought uninsured benefits as a result of the tortfeasor (Suzuki) not having insurance. *Id.* The policy exclusion provided, in pertinent part, "An uninsured motor vehicle does not include a land motor vehicle... (5) defined for use mainly off public roads except while on public roads." (emphasis added) *Id.* at 277. Uninsured motorist coverage was denied, and suit followed.

The certified question submitted to the Florida Supreme Court was: "WHETHER A VEHICLE DESIGNED PRIMARILY FOR OFF-ROAD USE

_____

[4] Defendants raise the same issue as to the applicability of *Grant*, and assert the *Grant* court's decision was "only" that the definition of motor vehicle found in the FRL was "consistent" with the plain meaning of motor vehicle. [IB 24] The argument is wrong for the same reasons as applied to *Carguillo*.
[5] It is logical to conclude a dirt bike trail is land.

CAN BE EXCLUDED FROM UNINSURED MOTORIST COVERAGE *BECAUSE IT IS NOT A "MOTOR VEHICLE" WITHIN THE DEFINTION OF THE FINANCIAL RESPONSIBITLIY LAW* OR WHETHER SUCH AN EXCLUSION IS VOID FOR PUBLIC POLICY REASONS?" (emphasis added) *Id.* at 277. Thus, the Fourth District Court of Appeals certified whether the exclusion was void, and there was no question on whether the Suzuki was a motor vehicle for purposes of Uninsured Motor Vehicle Coverage. There was no explanation or suggestion that the FRL was relied on simply because an exclusion was at issue - there was no question as to the applicability of the FRL. *Id.* at 278 ("In this case, the owner of the Suzuki motorcycle was not required to maintain liability insurance on the cycle *because it was not a motor vehicle under Section 324.021(1).*")(emphasis added) Whether or not the Suzuki was a motor vehicle for purposes of uninsured motorist coverage turned on whether it was required to be insured. *Id.* at 278.

In sum, in Carguillo, the Florida Supreme Court held a self-propelled vehicle that is *capable*[6] of being driven on public roads, was not a motor vehicle under the

---

[6] Defendants also argue Uninsured Motor Vehicle means *any* land motor vehicle, even those that are not permitted to be used on, and not designed and licensed for use on Florida's public roads. The Defendants' position is that because the Razor Scooter was *capable* of being operated on a public road and was, it is a land motor

25

uninsured motor vehicle coverage section of the policy because it was not required to be insured under the FRL, and therefore not a motor vehicle. *Id.* Stated another way, the Florida Supreme Court affirmed the lower court's use of the definition of motor vehicle found in the FRL even though the definition would cause the insured/purchaser to be ineligible for coverage. Here, similar to the Suzuki, the Razor Scooter was not required to be insured under Florida's FR Law (because it was not designed for use on Florida's public roads).

Thus, it was proper for the district court to use the FRL's definition of motor vehicle when interpreting whether the Razor Scooter is an Uninsured Motor Vehicle under the terms of the Policy.

### III. The Definition of Motor Vehicle Found in Florida's Financial Responsibility Law is the Basis of State Farm's Motion for Summary Judgment

Defendants raise several arguments contained within multiple pages of their Brief discussing various statutes referenced in the Complaint. [IB 21-42] The referenced statutes demonstrate how certain vehicles have been deemed something other than a motor vehicle and/or how motor vehicle is defined in various statutes. That said, the FRL and how it defines the term motor vehicle was the basis of State

---

vehicle and an Uninsured Motor Vehicle under the terms of the Policy. [IB 18 & 20]

Farm's Motion. [Doc 35] Additionally, the district court relied on the FRL, not the

other statutes. [Doc 42] Therefore, the only issue on appeal involving a statute

involves the FRL[7] – Is it appropriate to use the FRL to define the term motor

vehicle in the context of a Policy's UM Coverage section? The Florida Supreme

Court has held it is. *Grant*, 638 So.2d 936; *Carguillo*, 529 So.2d 276.

## IV. The Additional Definition Found in the Amendatory Endorsement is Not at Issue

The Policy contains an Additional Definition providing an Uninsured Motor

Vehicle does <u>not</u> include a land motor vehicle or trailer designed for use *primarily*

off public roads, except while on public roads.  [Doc 1-2, Pg. 6-7] State Farm did

not rely on this Additional Definition to define what the Razor Scooter is. Instead,

State Farm referenced this language to demonstrate it did not grant or extend UM

coverage to the Razor Scooter as Defendants seemed to suggest. [Doc 35, Pg. 13-

14] This Additional Definition does not extend UM Coverage to the Razor Scooter

simply because it is *capable* of being driven on Florida's roads. As the district

court correctly pointed out, in this matter the issue is whether the "Scooter is a land

motor vehicle under the Financial Responsibility Law at all." [Doc 42] Further, the

district court clearly explained the Additional Definition had "no bearing on

---

[7] And Florida's uninsured motorist statute.

whether the Scooter is a "land motor vehicle" under the Financial Responsibility Law." [Doc. 42, Pg. 17]

## CONCLUSION

The Razor Scooter is not designed for use upon public roads. Thus, Florida law does not require it to be insured. It would be contrary to the purpose of uninsured motor vehicle laws to extend coverage when the at fault vehicle is not designed for use upon highways and not required to be insured. *Amica,* 235 So.3d 1041, 1043 ("UM coverage is intended to provide the reciprocal of liability coverage."); *Carguillo,* 529 So.2d at 278 ("We agree that section 627.727 provides an insured motorist with *at least the same amount* or protection as would have been provided if the tort-feasor had complied with the financial responsibility law.")(emphasis added); citing, *Mullis,* 256 So.2d at 236. The Razor Scooter is not a motor vehicle. The Court should affirm the district court's order granting summary judgment.

## CERTIFICATE OF COMPLIANCE WITH FONT STANDARD

Undersigned counsel hereby respectfully certifies that the foregoing Brief complies with Fed. R. App. P. 32(g)(1) and has been typed in Times New Roman, 14 Point and contains 6531 words.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been served via eservice to Gregory D. Swartwood (GSwartwood@nationlaw.com), Mailing Address: 570 Crown Oak Centre Dr, Longwood, FL, 32750; on December 8, 2021.

s/Carri S. Leininger
Carri S. Leininger, Esq.
**E-Service only:  eService@wlclaw.com**
**E-Mail only:  cleininger@wlclaw.com**
Florida Bar No. 0861022
Maureen Martinez, Esq.
**E-Service only:  eService@wlclaw.com**
**E-Mail only:  Mmartinez@wlclaw.com**
Attorneys for Appellee State Farm Mutual Automobile Company
Williams, Leininger & Cosby, P.A.
11300 US Highway One, Suite 300
North Palm Beach, Florida 33408
Telephone No. (561)615-5666
Facsimile No. (561)615-9606